[No. 12596. In Bank. — November 29, 1890.]

# WILLIAM C. WATSON, RESPONDENT, *v.* ADOLPH SUTRO ET AL., APPELLANTS.

VENDOR AND PURCHASER — NOTICE TO PURCHASER — ATTORNEY AND CLIENT — AGENCY — CONSTRUCTIVE NOTICE — UNRECORDED DEED. — Notice of equities or of an infirmity of title to an attorney, counsel, or agent, acquired during negotiations for a purchase, is constructive notice to the client or principal, and such constructive notice is conclusive and irrebuttable; and if an unrecorded deed under which the client must rely for the title purchased is shown to his attorney, he is chargeable with notice of marks of infirmity appearing upon the face of such deed, and is bound by its legal effect, regardless of the error of the attorney in misinterpreting the instrument, or of his neglect to inform his client of such infirmity.

ID. — TRUST — SUBSTITUTION OF TRUSTEE — CHANGE OF BENEFICIARY — PURCHASE WITH NOTICE. — Where several tenants in common conveyed land to a trustee by a deed absolute on its face, which was duly recorded, and the trustee executed a declaration of trust, reciting the conveyance to him by the parties to facilitate the settlement of the title, and binding himself, his heirs, and assigns to reconvey the proportions conveyed by them after the title is settled, and one of the tenants in common was afterward substituted as trustee in place of the first trustee, upon receiving a conveyance from him, and thereafter executed a declaration of trust to the same effect as the first declaration, except that he omitted the name of one of the co-tenants, and agreed to convey the share owned by such co-tenant to another co-tenant, from whom he had obtained it by deed duly recorded, a purchase of such share by the substituted trustee from the one to whom he had agreed to convey it cannot make him an innocent purchaser, as he was bound to know, as a matter of law, that he was trustee for the same parties as the first trustee, and that he could not displace one beneficiary and substitute another in his place by ignoring the right of the former and recognizing another as holding his interest.

ID. — CONSTRUCTION OF DEED — TRUST — LIMITATION OF GRANT — DESCRIPTION OF QUANTITY. — A deed to a trustee of certain lands described as lands the legal and equitable title to which was then in the trustee does not convey to the trustee lands to which he did not then have either the legal or equitable title, but which he had previously conveyed to one of the grantors; such lands are excluded from the grant by implication, and the clear limitation of the grant will not be controlled by a general description of quantity qualified by the words "more or less" which represent the trustee as holding in trust land equal in quantity to that owned by him before the previous conveyance to such grantor.

ID. — ESTOPPEL — DECEIT — PURCHASE FROM TRUSTEE. — Without the element of deceit there can be no estoppel; and if one of the grantors in a deed of trust did not intentionally deceive or do anything to mislead a

purchaser from the trustee, who relied upon the representation of the trustee that he had the power to convey certain lands of the grantor, which the trustee did not own, and which the deed gave him no power to convey, the grantor is not estopped from denying the title of such purchaser.

PARTITION — EQUITABLE TITLE. — An action for partition may be maintained by the owner of an equitable title. Such a title is real property, and an estate of inheritance, which may descend or be conveyed by the owner; and as legal and equitable remedies may be had in the same case, the owner of the equitable title to an undivided interest in land may sue to establish his right, and to obtain a partition of the common estate.

ID. — EQUITY — JURISDICTION — COMPLETE RELIEF. — When a court of equity has once obtained jurisdiction, it will do complete justice by deciding the whole case. Equity will not permit litigation by piecemeal, but will determine the whole controversy, so as to prevent future litigation.

ID. — TENANCY IN COMMON — ADVERSE POSSESSION — POSSESSION OF TRUSTEE — REPUDIATION OF TRUST — STATUTE OF LIMITATIONS. — Where there is no adverse possession against a tenant in common by any of his co-tenants, and no open repudiation of trust has been made, to his knowledge, by a trustee in possession, the possession of the trustee is as much his possession as that of the other co-tenants, and the statute of limitations cannot run against him, though the trustee had not declared a trust in his favor, but had declared a trust in favor of the other co-tenants, and had purchased his interest from another co-tenant, if such declaration of trust and conveyance were unknown to such tenant in common.

POWER OF ATTORNEY — CONVEYANCE IN NAME OF AGENT. — A power of attorney, though coupled with an interest, and claimed to be irrevocable, cannot be used to justify a conveyance by the agent, when he claimed the property as his own, and conveyed it in his own name, as his own, and not under the power of attorney.

APPEAL from an order of the Superior Court of the city and county of San Francisco denying a new trial.

The facts are stated in the opinion of the court.

*Lloyd & Wood,* for Appellant.

The plaintiff, having no legal estate, cannot maintain partition. (*Harris* v. *Reynolds,* 13 Cal. 518; 73 Am. Dec. 600; *Sullivan* v. *Sullivan,* 66 N. Y. 40; *Morse* v. *Morse,* 85 N. Y. 57; *Warfield* v. *Gambrill,* 1 Gill & J. 503; *De Uprey* v. *De Uprey,* 27 Cal. 335; 87 Am. Dec. 81; *Morenhout* v. *Higuera,* 32 Cal. 294; *Emeric* v. *Alvarado,* 64 Cal. 529, 609.) The possession of Baird was adverse to Watson, the trust

being only implied. (*Hecht & Slaney*, 72 Cal. 363, 366; *Norris* v. *Haggin*, 28 Fed. Rep. 277; *Wilmerding* v. *Russ*, 33 Conn. 77; *Beaubien* v. *Beaubien*, 23 How. 207; *Wheeler* v. *Piper*, 3 Jones, 249; *Philippe* v. *Philippe*, 115 U. S. 157; *Wood* v. *Carpenter*, 101 U. S. 140; *Robbins* v. *Hope*, 57 Cal. 495.) Proof of notice must be such as to fix upon a subsequent purchaser a charge of *mala fides*. (*Dey* v. *Dunham*, 2 Johns. Ch. 189; *Vest* v. *Michie*, 31 Gratt. 151; 31 Am. Rep. 722; *Mullen* v. *Engelen*, 12 Bush, 444; *Cavin* v. *Middleton*, 63 Iowa, 618; *Carrier* v. *Town of Shawangunk*, 10 Fed. Rep. 220; *Wilson* v. *Wall*, 6 Wall. 90; *Hardy* v. *Harbin*, 1 Saw. 202.) After attesting a solemn declaration that Sullivan owns fifteen acres of the Byfield tract, or thereabouts, in an instrument designed expressly for the adjustment of the rights and interests of all parties concerned, and to enable Sullivan to close up the administration thereunder referred to, it does not lie in the mouth of Watson to say that he retains an interest. (*Shelly* v. *Wright*, Willes, 12; *Salter* v. *Kidley*, 1 Show. 56; *Goodtitle* v. *Bailey*, 2 Cowp. 600; *Lainson* v. *Tremere*, 1 Ad. & E. 792; *Bowman* v. *Taylor*, 2 Ad. & E. 290; *Stow* v. *Wyse*, 7 Conn. 219; 18 Am. Dec. 99; *Adam* v. *Lansing*, 17 Cal. 629; *Pierce* v. *Whiting*, 63 Cal. 540; *Freeman* v. *Auld*, 44 N. Y. 50; 3 Smith's Lead. Cas. 690, 707.) The law presumes that the trustees performed their duties, acted according to the rights of the parties, and obeyed the instructions of those authorized to give them. (*French* v. *Edwards*, 21 Wall. 150; Perry on Trusts, sec. 349; Lawson on Presumptive Evidence, 405, 410, 413, 424, 426; Code Civ. Proc. sec. 1963, subds. 1, 19, 27, 37.)

*Stanly, Stoney & Hayes*, for Respondent.

An equitable title is sufficient to sustain a suit for partition. (*Hitchcock* v. *Skinner*, 1 Hoff. Ch. 24; *Cartwright* v. *Pultney*, 2 Atk. 380.) An action for partition is a suit in equity, and when all who hold legal or equitable

rights in the premises are before the court, a partition between them can be had, and all equitable rights determined. (*De Uprey* v. *De Uprey*, 27 Cal. 355; 87 Am. Dec. 31; *Morenhout* v. *Higuera*, 32 Cal. 294; *Pfister* v. *Dascey*, 65 Cal. 405; *Emeric* v. *Alvarado*, 64 Cal. 529, 629, 761, 762, 767; *Coxe* v. *Smith*, 4 Johns. Ch. 276; Freeman on Cotenancy and Partition, secs. 439, 449, 463, 505, 506; *Hosford* v. *Merwin*, 5 Barb. 52; *Scott* v. *Guernsey*, 60 Barb. 178; *Hunter* v. *Brown*, 7 B. Mon. 234; *Williams* v. *Wiggard*, 53 Ill. 233.) Plaintiff's action is not barred by limitation. (*Love* v. *Watkins*, 40 Cal. 569; 6 Am. Rep. 624; *Warmouth* v. *Johnson*, 38 Cal. 622; *Gerdes* v. *Moody*, 41 Cal. 335; *Trenouth* v. *Gilbert*, 63 Cal. 407; Freeman on Cotenancy and Partition, secs. 151, 154, 166, 167; *Coleman* v. *Clements*, 23 Cal. 245.) Watson had no notice of Baird's declaration of trust, or of his adverse possession. (*Carpentier* v. *Mendenhal*, 28 Cal. 484; 87 Am. Dec. 135; *Bath* v. *Valdez*, 70 Cal. 350; *Vaughan* v. *Bacon*, 15 Me. 457; 33 Am. Dec. 628; *Lister* v. *Pickford*, 34 Beav. 580; *Foscue* v. *Foscue*, 2 Ired. Eq. 325; Perry on Trusts, secs. 217, 222, 830.) Sutro cannot be protected as a *bona fide* purchaser. He did not plead such defense. (*Isenhoot* v. *Chamberlain*, 59 Cal. 630; *Aurrecoeachea* v. *Sinclair*, 60 Cal. 532; *Boone* v. *Chiles*, 10 Pet. 177.) He is charged with knowing whatever came to the knowledge of his attorney, E. J. Moore, who examined the title for him, and upon whose report he purchased the property. (*Donald* v. *Beals*, 57 Cal. 399; *The Distilled Spirits*, 11 Wall. 307.) It was his duty to apply for information to Mr. Watson, whose rights were involved, and who alone was authorized to speak for himself, and is chargeable with notice of what he might have ascertained by reasonable diligence. (*Cordova* v. *Hood*, 17 Wall. 8; *Mulliken* v. *Graham*, 72 Pa. St. 491; *Lawton* v. *Gordon*, 37 Cal. 297; Civ. Code, sec. 19; *Barnes* v. *McClinton*, 3 Penr. & W. 67; 23 Am. Dec. 62; *Weeks* v. *Haas*, 3 Watts & S. 522; *Blaisdell* v. *Stevens*, 16 Vt. 179; *Doyle* v. *Teas*, 4

Scam. 202; *Chicago, R. I., & P. R. R. Co.* v. *Kennedy*, 70 Ill. 350; *Baker* v. *Bliss*, 39 N. Y. 70; *Wright* v. *Ross*, 36 Cal. 437; *Eversdon* v. *Mayhew*, 65 Cal. 163; *Abell* v. *Howe*, 43 Vt. 403; *Williamson* v. *Brown*, 15 N. Y. 354; *Galland* v. *Jackman*, 26 Cal. 80; 85 Am. Dec. 172.) Watson was not estopped by Sullivan's representations to Sutro. (*Stroughill* v. *Buck*, 14 Ad. & E. 784; Bigelow on Estoppel, 2d ed., 269–280.) The recital as to the interest of Sullivan in the Byfield tract was too general and uncertain to create an estoppel upon any of the parties. (Bigelow on Estoppel, 273–277; 1 Greenl. Ev., sec. 26, n. 2; *Hall* v. *Mayhew*, 15 Md. 551; *Stebbins* v. *Eddy*, 4 Mason, 419; *Jones* v. *Plater*, 2 Gill, 128; 41 Am. Dec. 408; *Hunt* v. *Stull*, 3 Md. Ch. 26; *Smallwood* v. *Hatton*, 4 Md. Ch. 98; *Stull* v. *Hurtt*, 9 Gill, 446.)

The COURT. — We have heard this case the second time, and upon a further examination of the record and the briefs of counsel, we feel constrained to adhere to the reasoning of the former opinion and the conclusion therein reached.

The order appealed from is therefore affirmed.

McFARLAND, J., and Fox, J., dissented.

BEATTY, C. J., dissenting. — I dissent. The deed executed in quadruplicate in April, 1870, by Watson, Sullivan, and the Davis heirs contains a distinct declaration, — a solemn admission by Watson that Sullivan was at that time the owner of the equitable interest here in controversy. The conduct of Watson and of all parties to these transactions was for many years consistent with that declaration, and inconsistent with any serious claim of ownership on the part of Watson. The holder of the legal title, with knowledge of that admission, bought in the equity and transferred both to Sutro.

I do not think that Watson should now be heard to deny the truth of a solemn admission upon which others have acted.

The following is the opinion above referred to, rendered in Bank on the 7th of June, 1890:—

THORNTON, J.— On the twelfth day of January, 1870, John H. Baird, the plaintiff, W. C. Watson, E. L. Sullivan, and nine other persons, tenants in common of the tract hereinafter mentioned, conveyed to David W. Connolly, by deed bearing date the day just named, a certain parcel of land situate in the city and county of San Francisco, known as the Byfield tract. The consideration named in the deed was one dollar. It was acknowledged and recorded on the 29th of the month and year above mentioned. Subsequently, other deeds were executed to Connolly of interests in this tract, which, as they do not figure in the controversy, need not be mentioned further. The Byfield tract is in that portion of the city and county of San Francisco affected by the provisions of the act of Congress of March 8, 1866, entitled "An act to quiet the title to certain lands within the corporate limits of the city of San Francisco."

On the 25th of January 1870, Connolly executed to the parties above mentioned and referred to, an instrument in writing, reciting the conveyance to him by the parties (naming them) of their several interests in the Byfield tract, and further reciting that such conveyance was made for the purpose of facilitating the settlement of the title to the same by deeding to the city and county of San Francisco the reservations made for public purposes by the outside land committee of the board of supervisors of the city and county, and for the procurement of the title of the city and county to the said tract to him.

This instrument then sets forth that Connolly binds himself, his heirs and assigns, as soon as the objects above stated shall have been accomplished, to reconvey to his grantors their respective proportions of the tract as shall remain in it after deducting the reservations made by the committee. This instrument, called the Connolly declaration of trust, was acknowledged on the

day it bears date, but was not recorded until the twenty-fifth day of June, 1880.

The above instrument clearly sets forth a trust in which Connolly was the trustee, and the other persons named in it were the *cestuis que trusten*. On the procurement of the title of the city, the tract so acquired was to be conveyed to the proper claimants, as above set forth. Connolly was to look to the matter referred to for all the beneficiaries of the trust, adjust all matters necessary to procure the title from the city and county of the lands referred to, execute the necessary conveyances to the city of the portions reserved, and then to reconvey, as above stated. Of these beneficiaries the plaintiff, Watson, was one expressly named in the instrument executed by Connolly on the twenty-fifth day of January, 1870.

Deeds were subsequently executed to Connolly by the city and county of the land to which he undertook to procure title. These deeds were three in number, executed in the months of March, April, and September, 1870, and were recorded on the day of their date. The lands thus conveyed to Connolly include the parcel in controversy here.

Afterward, on the second day of December, 1871, Connolly executed to John H. Baird, who was one of his grantors, and one of the beneficiaries under his declaration of trust, a deed absolute in form, and purporting to convey to the grantee the Byfield tract. This deed was recorded on the twentieth day of August, 1872.

It is found as a fact that the deed just above mentioned was executed by Connolly and accepted by Baird without consideration, and subject to and in furtherance of the trusts upon which Connolly was then holding title to the premises, and with full knowledge of the trusts under which Connolly held the property which he conveyed to him. In fact, it seems that Baird was but a substituted trustee, substituted in place of Connolly, and,

from what subsequently occurred, so substituted with the consent of what may have appeared to Baird of all the beneficiaries; for on the third day of January, 1872, Baird executed a declaration of trust, in which it is set forth that the Byfield tract, less a portion reserved for a public park, had been conveyed to him in trust, and was held by him in trust for the persons named in this declaration. In this declaration the share of each is specifically set forth. Baird's own share is stated to be forty-one one hundred and sixtieths; Sullivan's, fifteen one hundred and sixtieths and others in like manner, sufficient to cover the aggregate one hundred and sixty shares.

It should be remarked here that this tract was supposed to contain 160 acres, and the proportion of each was designated by a fraction, in which the supposed number of acres was taken as the denominator. Among the names of the owners or beneficiaries in Baird's declaration of trust, the plaintiff's name does not appear. E. L. Sullivan's name appears in it as the owner of fifteen one hundred and sixtieths, as above stated. The controversy in regard to the land involved herein turns, in great part, on the disappearance of Watson's name from the list of beneficiaries, and the appearance of Sullivan's name, for a share or proportion, which seems to include both his share and that of Watson. Watson's share had been conveyed to him by Sullivan on the tenth day of December, 1862, which specified as the portion conveyed five one hundred and sixtieths of the Byfield tract. This conveyance purported to be for value, and was properly recorded on the fourth day of December, 1865.

All the parties to the Connolly deed claimed under mesne conveyance from one John K. Moore, which conveyance had been properly recorded prior to the date of the deed to Connolly. The findings show that at the date of the deed just mentioned to Connolly, the twelfth

day of January, 1870, Sullivan held fifteen one hundred and sixtieths of the Byfield tract after his conveyance to Watson. He subsequently conveyed five one hundred and sixtieths to another beneficiary (Sharpstein), by deed dated the seventh day of May, 1868, leaving in him ten one hundred and sixtieths of the tract, when, on the twelfth day of January, 1870, he joined in the execution of the deed to Connolly.

On the first day of February, 1879, Sullivan executed to Baird a deed purporting to be in consideration of ten thousand dollars, which conveyed to Baird certain lands by the following description: "All the interests of the first party in and to the tract of land situate in the city and county of San Francisco, state of California, known as the Byfield tract, the interest of said first party in said tract of land being about thirteen acres, more or less," which deed was duly acknowledged on the 18th of February, 1879, and on the same day recorded in the proper office of the city and county of San Francisco.

It is found that at the date of this deed Sullivan had no greater interests than he had on the 12th of January, 1870, the date of the deed to Connolly of his ten undivided one-hundred-and-sixtieth parts. In June, 1880, the defendant Sutro purchased of Baird the interest which Baird claimed to own in the Byfield tract, which Baird represented was fifty-five one hundred and sixtieths of the tract. This quantity was made up of his (Baird's) forty one hundred and sixtieths, and the fifteen one hundred and sixtieths, which he claimed had been sold and conveyed to him by Sullivan. This fifteen one hundred and sixtieths was represented by Baird to Sutro as embracing the five one hundred and sixtieths which Sullivan in 1862 had conveyed to Watson. The negotiation for the purchase by Sutro commenced in June, 1880, and was consummated by a deed from Baird to him bearing date the 26th of that month. This deed purported to convey fifteen one hundred and sixtieths of

the property described in the complaint, which was the same proportion of the Byfield tract after the deduction of the reservation above mentioned. This deed was for a valuable consideration, and was executed by Baird and accepted by Sutro as a conveyance of the ten one hundred and sixtieths of Sullivan and the five one hundred and sixtieths of Watson. About the same time, Sutro acquired and received conveyances from other beneficiaries of their interests to the Byfield tract, but as they do not bear on the questions to be determined herein, they need not be further adverted to.

This action was brought by the plaintiff to charge Sutro, as purchaser, with notice of his interest, five one hundred and sixtieths, in the tract above mentioned, as described in the complaint, and for a partition. The court below found that Sutro was a purchaser with notice of Watson's equitable rights, and charged him as a trustee for Watson, to the extent above mentioned.

The question to be here passed on relates to the sufficiency of the evidence to justify the above finding of the court.

Pending the negotiations between Sutro and Baird for the purchase of this land, Sutro employed able and distinguished attorneys to examine and pass on the asserted title of Baird. These attorneys did examine and pass on that title, and on their representation Sutro paid the purchase-money and took a conveyance from Baird. Baird and the defendant had notice, by the record, of the deed from Sullivan to Watson conveying to the latter his interest in the Byfield tract. This deed had been regularly recorded in the proper office in December, 1865. He also had like notice of the deed of the 12th of January, 1870, made to Connolly by his tenants in common, of whom Watson was one, which was recorded on the 29th of January, 1870. The registry of deeds then showed that the title had passed from Watson to Connolly. The registry further showed that Connolly

had received deeds for the land held by him in trust from the city and county of San Francisco. At the time of the negotiation for the purchase from Baird, the record showed that the title to this interest was in Baird.

In the progress of the examination, the declarations of trust executed by Connolly and Baird, which had never been recorded, were furnished to Sutro's attorneys. The Connolly declaration showed plainly that he was trustee for Watson, as well as for Sullivan. The extent of Watson's interest did not appear on this paper, nor did the amount of the interest held by either of the beneficiaries. The Baird declaration did not mention Watson's interest. It showed the interests of the other owners, but Watson's was omitted. The above attracted the attention of the attorneys, and their inquiry was at once directed to this interest to ascertain what had become of it, whether it had been acquired by some other of the co-owners, and if so, by whom. In pursuing their investigation in regard to this interest, application was made to Baird and Sullivan. One of the learned gentlemen called upon Baird. He gives in his testimony a full account of the interviews with both Baird and Sullivan. After stating, in regard to his investigation of the title, that he had found the Connolly declaration of trust, the deed of Connolly to Baird conveying the property known as the Byfield tract, and the Baird declaration of trust mentioning the proportions of the several co-owners, amongst others Sullivan's, stating his interest at fifteen one hundred and sixtieths, omitting Watson's altogether, the proportions named making up 160 acres, he proceeds: " I proceeded to inquire what became of Watson's interest, and why he was left out. I called upon Baird, and he said: 'Why, that is all right. That declaration of trust embraces the parties who are now in interest.' I said: 'I do not see what has become of Watson there.' He said: 'There is a family arrangement between Watson and Sullivan.' He then told me that

Watson was related to Sullivan by marriage, which I did n't know before. I did n't know who he was, at all. He said: 'You had better go and see Sullivan yourself.' He said: 'There was an arrangement that was satisfactory between them, as I understood it, always, in regard to this.' He said, furthermore: 'It has been in my name, as you see, for a long while.' I did not, I think, take the paper to him in the first instance. I did afterward, and he says: 'It has been ten years or so, and if it is wrong he has been very patient about it; but you had better go and see Sullivan, and he will explain it all to you.'"

The attorney then went to see Sullivan, and told him his errand; "that Baird was about conveying property, and I find that he (Sullivan) had conveyed fifteen one hundred and sixtieths of it, and I wanted to know where Baird got his title, and he told me there was an arrangement between him and Watson in respect to this little interest which he had. And he mentioned, also, that he had spent, or that Watson had cost him — I think that was his expression — a good deal of money, and that he had an arrangement by which he could take this property, treat it as his own, sell it, and dispose of it in any way he chose. I asked him if that was in writing. 'Yes,' he said; that it was all in writing. He says: 'Had n't you seen it?' I say, 'No'; and he says: 'It is on record.' I said: 'No, it is not; it is not in my abstract at all.' He said there were several copies of it. 'I thought it was recorded.' Well, I asked him if he had a copy. He said, 'Yes.' I asked him if he would not find out where he could get it. He said he would look it up, and asked me to come the next day, or, he said, 'I'll call on you.' I said I wished him to call on me at the office, which he did, and then he had a paper, which I have identified on the stand about as nearly as I can. I don't know who had charge of Sullivan's papers; since his death I asked Watson, and he said he finds it very

difficult to get any knowledge at all about Sullivan's papers. I had it in my hand and read it, but it was not in my possession. I spoke to Mr. Sullivan about it. He produced it, either the next day or the day after, and I found it had not been recorded. I told him that it · ought to be recorded; that it was explanatory of the title of Baird. I made no further inquiries about Watson's interest after that."

This witness afterward testified that "Sullivan said, also, that the conveyance to Watson did not cost him a cent; that it was a gift, but in consequence of the cost which he had been put to on Watson's account he intended this to be used for the benefit of the family, and the instrument between them evinced his right to use it."

On the trial, the original of an instrument in writing, and executed by Sullivan as a party of the first part, and George J. Bucknall, his wife, William C. Watson, the plaintiff, Elizabeth Anne, his wife, and John C. Davis, parties of the second part, was produced by Watson and was put in evidence by Sutro.

This paper, in our judgment, was the paper a copy of which was shown by Sullivan to Sutro's attorney at the interview between Sullivan and the attorney, an account of which is given above. We think it was sufficiently identified by the attorney when giving his testimony. Much stress is laid on this paper by counsel for appellant as bearing on the question of notice, and it becomes necessary to examine and consider it.

It bears date on the twenty-fifth day of April, 1870, soon after the execution of the deed to Connolly and his trust declaration, and was executed in quadruplicate. Watson had a copy.

This paper, after stating the parties of the first and second parts, as above set forth, proceeds to witness and declare that whereas, the parties of the second part have by an indenture executed before this paper, and bearing

date the same day, granted, bargained, sold, and con-
veyed to the party of the first part (Sullivan) all their
right and title to three lots in the city and county of
San Francisco, bounded southerly by Washington Street,
easterly by Montgomery Street, and westerly by Kearny
Street, and northerly by a line parallel with Washington
Street, and distant from it northerly $137\frac{1}{2}$ feet, that the
money consideration expressed in said indenture is
merely nominal, and it is considered proper, prudent,
and just to set forth and declare these considerations re-
ferred to in said indenture as good, valuable, and suffi-
cient, moving the parties of the second part to the
execution of that indenture,—now, this instrument is
intended to set forth and declare, not only the true nature
of the considerations last above mentioned, but also the
respective relations of the parties hereto to the above-
named lot and other real estate hereinafter described.
The instrument just named sets forth the respective in-
terests of the parties named — E. L. Sullivan, Mary
Eliza, Elizabeth Anne, and John C. Davis — in the lots
aforesaid, describing Mary as the wife of Bucknall and
Elizabeth as the wife of the plaintiff, Watson. It recites
that the interests of Mary and Elizabeth and John C.
Davis are claimed and owned by devise from their father,
John C. Davis, and failing this devise, by descent, and
also by devise, from their mother, Elizabeth Davis, and
that any additional title acquired by possession, and by
any act of the legislature, or by act of Congress, by Sul-
livan, shall inure to the parties hereto according to their
several interests as set forth herein. It is further de-
clared that Sullivan had administered the property
aforementioned from 1850 to the date of this instru-
ment, first as agent of Elizabeth Davis, next as executor
of her will, and afterward in his own behalf, to the ex-
tent of his interest, and as guardian of the said Mary,
Elizabeth, and John C. Davis until they attained major-
ity, and since that time as the agent; and throughout

that time has rendered his services gratuitously, moved thereto by his love and affection to the parties to the second part, and especially to the said Mary, Elizabeth, and John C. Davis, regarding them as his own offspring; and has improved the said property and maintained possession thereof during this administration; has incurred large indebtedness, amounting to about three hundred and fifty thousand dollars, resulting from the expenses of administration of said real estate, the purchase of certain real estate hereinafter mentioned, the education and maintenance of said Mary, Elizabeth, and John C. Davis; the greater part of which indebtedness is secured by a mortgage of the three fifty-vara lots above described in said indenture, which mortgage was executed by all the parties to this instrument except John C., who did not join in the execution, by reason of his minority; that said John, having become of age, subjects, as between himself and the other parties hereto, his title to the said property to the said mortgage to the same extent as if, being of age, he had joined in its execution, and each one of the parties hereto waives and releases all claim as against each other which either might have or set up against the others by reason of having received more or less of the proceeds of said property heretofore mentioned.

The instrument then proceeds to declare that the party of the first part (Sullivan) has acquired during the period of said administration, of the city and county of San Francisco, certain other valuable real estate, described hereinafter, the legal and equitable title of which is now in Sullivan, the party of the first part.

And all parties hereto have agreed that all the real estate last above mentioned, so acquired as above stated, and all the said fifty-vara lots, shall be deemed to be the property of Sullivan, and of the said Mary, Elizabeth, and John C. Davis, each to have an undivided fourth part thereof, subject to the indebtedness in like propor-

tion, and that the legal title to the same shall be and remain in the party of the first part, to facilitate the administration thereof, the sale and other disposal of portions of the whole thereof, the payment and extinguishment of said indebtedness, and finally the partition and division of the same, or the proceeds of the same, or the remainder thereof, at some future day. The foregoing basis of judgment is declared by the instrument as being deemed by all the parties equitable and just, and is the true consideration for the said indenture, and this agreement and said indenture has been executed in pursuance and part performance thereof.

The instrument then further states and witnesses, and the parties do thereby declare, that Sullivan " holds the following described property in trust, and to administer, bargain, sell, convey, mortgage, or otherwise encumber and dispose of the same, or any estate or interest therein, and to discharge, out of the rents, issues, and profits, or other proceeds thereof, the aforesaid indebtedness, and all encumbrances now or hereafter to be a lien on the same, and afterward to make partition or division among all the parties to these presents of all and singular the remainder of said property,—that is to say, to each of the said Mary Eliza Bucknall, Elizabeth Anne Watson, and John C. Davis, one fourth in severalty of said remainder, reserving to himself the other fourth, likewise in severalty; and it is expressly declared that all authority and power for the execution of all and singular the said trusts, and for the purpose of doing and performing all of the acts and things necessary for the carrying out of the same, is hereby delegated to the said party of the first part by the parties of the second part, and that the authority and power so conferred and delegated, coupled as it is with an interest, is irrevocable (a general power of attorney irrevocable), so far as the property hereinafter described is concerned, and bearing even date herewith, has been

executed and delivered by the parties of the second part hereto to the party of the first part, for the purpose of aiding him in executing the power and authority herein and hereby conferred and delegated, and carrying out the intents and purposes thereof."

The instrument then sets forth by description the real property "so as aforesaid held in trust by the party of the first part."

The three fifty-vara lots and the several parcels of outside lands are described, and among these a parcel of outside lands is described in the following words: "An interest in another tract of outside lands, known by the name of the Byfield tract, amounting to fifteen acres or thereabouts." This instrument was executed in quadruplicate, and was under seal. It is clearly a deed of conveyance.

The foregoing sets forth all the facts ascertained by the learned gentlemen retained by Sutro in their investigation of the title which the latter desired to acquire by his purchase from Baird. It appears, and is found as a fact, that Sutro had no actual knowledge of any of the foregoing facts on which the question of notice turns. The only notice which he had was that which the law attributes to him from its having been brought to the knowledge of his attorneys. Knowledge by notice to attorney or counsel or agent acquired during the negotiations for a purchase is constructive notice to their principal. If it were otherwise, it would cause great inconvenience, and notice would be avoided in every case by employing agents. (See cases cited in 2 Lead. Cas. Eq., pt. 1, pp. 133, 134.) That notice to an agent is notice to the principal has been held in this state ever since *Connelly* v. *Peck*, decided in 1856, and reported in 6 Cal. 348; followed in *May* v. *Morrell*, 12 Cal. 91; *Stanley* v. *Green*, 12 Cal. 148; *Hunter* v. *Watson*, 12 Cal. 363; 73 Am. Dec. 543. (See other cases referred to in Gear's California Index-Digest, 97.) No-

tice to counsel or attorney is constructive notice to client. (*Bierce* v. *Red Bluff Co.*, 31 Cal. 161, decided in 1866, and *Donald* v. *Beals*, 57 Cal. 399.)    All these cases in regard to an agent apply to an attorney or counsel; for they are a species of agent.    Justice Bradley, in *The Distilled Spirits Case*, 11 Wall. 367, states the principle on which the rule rests: "The general rule," says the learned judge, "that a principal is bound by the knowlege of his agent is based upon the principle of law that it is the agent's duty to communicate to his principal the knowledge which he has respecting the subject-matter of the negotiation, and the presumption will be that he will perform that duty.  It will be of no avail to the purchaser that the agent omitted to communicate what he ascertained to his principal.  (*Williamson* v. *Brown*, 15 N. Y. 359.) In other words, one who acts through another will be presumed to know all that the agent learns during the transaction, whether it is actually communicated to him or not.  There is no difference in this respect between actual and constructive notice; for if there were, an agent would be employed whenever it was convenient to remain in ignorance." (*Bank of United States* v. *Davis*, 2 Hill, 451–461.)    Or as the reason of the rule was stated by Lord Brougham: " Policy and the safety of the public forbid a man to deny knowledge while he is so dealing, as to keep himself ignorant, or so that he may keep himself ignorant, and yet all the while let his agent know, and himself profit by that knowledge." (*Kennedy* v. *Green*, 3 Mylne & K. 699–719.)    It is plain that the ordinary dealings of men could not be carried on without imperiling the rights of property to a degree which could hardly be conceived, and infinite wrong done to innocent persons, unless the rules above pointed out were established canons of law.

Now, if Baird was an innocent purchaser, Sutro, though he had notice, could not be charged.  Equity acts on and charges a person by reason of the obliga-

tion which rests on his conscience, and in regard to the duties he owes to others. Baird could only be innocent by reason of the fact that he had no knowledge or notice of Watson's rights, which bound him to regard them, and if he was innocent, his conscience could not be charged; and through his innocence, Sutro, though aware of Watson's rights, would be discharged.

Was Baird, then, an innocent purchaser? We think it is plain he was not, unless he was made so by the provisions of the instrument of the 25th of April, 1870, above fully set forth. It is too plain to admit of argument that he bought with notice of the equity of Watson. He had at least constructive notice, imparted by the record of Watson's deed from Sullivan, executed in 1862, and regularly recorded in December, 1865. When he took the deed from Connolly, in 1871, he must be held to have been aware of the conditions of the title which Connolly had. Connolly was a trustee, and Baird was nothing more when he received the conveyance from the former. As a matter of ordinary prudence he would have ascertained from Connolly for whom he was trustee, and to whom, as Connolly's grantee, he assumed that relation. He was tenant in common with others. This he must have known. It would be inconceivable to conclude that Baird did not know the purpose of the transaction with Connolly, and that purpose as set forth in a paper executed by Connolly for the benefit of his (Connolly's) grantees, of which Baird was one. Baird was co-tenant with the other grantors, and the transaction with Connolly was made in the interest of himself and his co-tenants. In the transaction, Connolly became a trustee to carry out a desired and declared purpose and intent. It will be the height of fatuity to conclude and hold, when Connolly conveyed to Baird, and put him in his place as trustee, that he did not tell Baird, and Baird did not seek to know for whom he was to undertake the duties and responsibilities of a trustee. If he did not

know, it was his duty to know this when he accepted the position, and certainly it was his duty to inquire when he executed his declaration of trust in 1872. It cannot be held that he did not know that his trust was co-extensive with Connolly's, and that he became trustee for the same persons. When he accepted the trust no doubt he knew that some question might arise as to Watson's title, for the gap here was plainly discernible. That he knew that there was no conveyance from Watson to any one but Connolly, one of the co-owners and *cestuis que trusten*, when he executed his declaration of trust, and put in Sullivan for fifteen one hundred and sixtieths of the trust property, may be justly inferred from what he stated to Sutro's attorney, above quoted.

Reference is here made to the conversation with Baird in relation to the declaration of trust, and that Sullivan was the true party in interest when the declaration of trust was made, in consequence of a family arrangement, to which Sullivan and Watson, who was related to Sullivan by marriage, were parties. In any event, Baird, when he assumed the position of trustee, instead of Connolly, was bound to know, as a matter of law, that he was trustee for the same parties as Connolly, and that he could not displace one beneficiary and substitute another in his place, by ignoring the right of the former and recognizing another as holding his interest. Neither Sullivan nor Baird, nor both together, could so deal with Watson's equitable title as to acquire it from him and transfer it to another person without Watson's consent. That Watson could have compelled Baird to convey to him would not have been questioned, and it would have been no defense to Baird that he had recognized Sullivan as the owner of Watson's interest, unless Baird was protected by the instrument above particularly set forth, executed by Watson and wife, with others, to Sullivan. On this depends the fact, too, whether Sutro is protected; for

neither, though they paid value, is an innocent pur-
chaser, or acquired Watson's title, unless under the pro-
visions of this instrument.   If this instrument vested in
Sullivan the full legal title to the property in controversy,
with power to use and sell it as his own property, and di-
vide the proceeds, giving Watson his share thereof, that
is, with accountability only to Watson for the proceeds,
both Baird and Sutro acquired this title through Sulli-
van's conveyance to Baird, which would end this liti-
gation.   Did this instrument, then, which had all the
requisites of a conveyance, pass such a title to Sullivan?
Let it be conceded that the words used are operative to
carry Watson's interest in the litigated property if the
instrument shows an intent by him to convey, *still, these
words must be limited to the property described in it.*

Now, as to this Byfield tract, in which Watson was
only individually concerned (as to other property, it is
clear it was owned by his wife), the words employed con-
fine it to such interest, the legal title to which was, at
the date of the instrument, in Sullivan.   The paper sets
forth that Sullivan (see the language fully set forth
above), during his administration of the property men-
tioned and described in it, had acquired in the city and
county of San Francisco certain other real estate therein
described, *the legal and equitable title to which was then
in him.*   The fair construction of these words is, that
they include the real property described in it, in which
he held the legal and equitable title, and exclude that in
which he did not hold such title.   This designates the
property with particularity to which reference is made.

As seen above, Sullivan held the equitable title, when
this instrument was executed, only to ten one hundred
and sixtieths of the Byfield tract.   Connolly held by
conveyance from him to this extent.   By conveyance
previous to the conveyance to Connolly, he had trans-
ferred to other persons (Watson and another) all except
the ten one hundred and sixtieths.   He held this interest

under the Connolly trust, which was made in January, 1870, the instrument we are here considering having been made the April following, before any change had been made by the transfer of Connolly to Baird. Sullivan did not have in April, 1870, the legal title to any part of the Byfield tract. It was in Connolly, or, more properly, in the city and county of San Francisco, under the act of Congress of March 8, 1866. If the words are restrained to the property of which he had both the legal and equitable title, this instrument did not transfer any of the Byfield tract, for he had neither the legal nor the equitable title to any portion of it. But the rule to construe deeds, *Ut magis valeat quam pereat*, compels the holding that it would pass such interest in this tract of which he held the equitable title. If this is not so, then it may be conceded, for the argument, that it passed the portion of which the equitable title was vested in him. Then this deeded to Sullivan only ten one hundred and sixtieths, and not fifteen one hundred and sixtieths, and did not include Watson's interest of five one hundred and sixtieths; nor is this quantity enlarged by the description of the interest in the Byfield tract, given in a subsequent portion of the instrument, where it is spoken of as containing fifteen acres, or thereabouts. The distinct statement in the instrument referring to certain property acquired by Sullivan during the course of administration, the legal and equitable title of which was then in Sullivan, limits the general and indefinite words of description as to the Byfield tract and the interest which Sullivan had in it. The description of quantity expressed in acres qualified by the words "more or less" has always been regarded indefinite and general. A purchaser by such description can get no relief on that feature only, unless the disparity is so great between the generally declared number of acres and the actual number as to be evidence of intentional fraud. That general words in a deed may be

restrained by the particularity of recital is an established canon of construction. (*Jackson* v. *Stevens*, 16 Johns. 110; *Shurtz* v. *Thomas*, 8 Pa. St. 359; *Barnard* v. *Martin*, 5 N. H. 536; *Woods* v. *Nashua Mfg. Co.*, 5 N. H. 467; *Payler* v. *Homersham*, 4 Maule & S. 423; *Simons* v. *Johnson*, 3 Barn. & Adol. 175.) And the effect of general words is confined, where the intention to confine it can be collected from the context. (*Munro* v. *Alaire*, 2 Caines, 320; *Wilkes* v. *Ferris*, 5 Johns. 335; 4 Am. Dec. 364; *Smith* v. *Strong*, 14 Pick. 128; *Woodman* v. *Lane*, 7 N. H. 241; 2 Smith's Lead. Cas. 517, notes to *Roe* v. *Tranmarr*.)

A clear and distinct limitation in a grant is not controlled by other words less clear and distinct. (Civ. Code, sec. 1067.)

Again, the circumstances in which the parties stood, and their knowledge, at the time, of the state of the title, should be considered in arriving at their intent. When he affixed his signature and seal to this instrument, Watson knew that he had never parted with his equitable title, and Sullivan must be held to have known the same thing. Connolly was then Watson's trustee. Watson was cognizant that his legal title was then in his own selected trustee, and it should be noted that this paper was executed long before the deed was made by Connolly to Baird, or the execution of Baird's declaration of trust.

A purchaser must be held to have notice of everything which appears on the face of the deeds under which he buys. He has constructive notice of what is contained in them, or which is a necessary inference from what is contained in them. (2 Lead. Cas. Eq., pt. 2, p. 125.) It cannot be limited to the recorded deeds and instruments, for notice is equivalent to registration. (2 Lead. Cas. Eq., pt. 1, pp. 37, 98, 149, 213, 299.) Surely no such limit can exist where the deeds and documents relating to the title are shown him. The recitals in a deed, however, to bind the conscience of a purchaser must be sufficiently clear and certain to convey the requisite

information or put him on his guard. A vague, general statement will not operate as notice, whether in a deed or elsewhere. As said by Chancellor Walworth: "The recital must be such as to explain itself by its own terms, without reference to some deed or circumstance which explains it or leads to its explanation."

Here the deed refers to property to which, at the time, Sullivan had the legal and equitable title. This is sufficiently certain. A purchaser was certainly put on inquiry when he and others executed the deed of the 25th of April. And on seeking information in regard to it, it would have appeared to have been then in Connolly, and limited to ten one hundred and sixtieths of the Byfield tract, and included no part of Watson's.

This deed was produced to Sutro's attorney. He testifies that he had it in his hands, and read it. He had notice of what was in it, and though it was constructive notice to Sutro, it bound him. As stated above, notice to an agent in course of a transaction is constructive notice to the principal, and it will not avail the latter to show that the agent failed to communicate to him what he was told. ( *Williamson* v. *Brown*, 15 N. Y. 359.) This constructive notice, when it exists, is irrebuttable. It is not merely *prima facie* evidence, for then it could be rebutted. It is conclusive against the truth of the fact, as said by Gibson, J., in *Weidler* v. *Farmers' Bank*, 11 Serg. & R. 134: "Constructive notice is not *prima facie* evidence of actual knowledge of the fact; the presumption of notice, if it arises at all, being conclusive even against the truth of the fact."

The cases cited by counsel for defendant as to constructive notice lay down no rule in conflict with those set forth. In the case of *Wilson* v. *Wall*, 6 Wall. 91, *supra*, it was attempted to charge a purchaser under a patent issued by the United States government in the execution of a treaty made with the Choctaws. The rule approved in the case referred to as to notice, as stated in Sugden

on Vendors, 622, coincides with the rule acted on in this case. "When a person has not actual notice, he ought not to be treated as if he had notice, unless the circumstances are such as enable the court to say not only that he might have acquired but also that he ought to have acquired it but for his gross negligence in the conduct of the business in question. The question, then, when it is sought to affect a purchaser with constructive notice is, not whether he had the means of obtaining, and might by prudent action have obtained, the knowledge in question, but whether the not obtaining was an act of gross or culpable negligence."

In *Carrier* v. *Shawangunk*, 10 Fed. Rep. 220, an attempt was made to defeat a recovery in an action brought by the holder on certain negotiable bonds purchased for value before maturity. The issuance of the bonds depended on the consent in writing of a majority of the tax-payers of the town. As stated by the court, and as fairly to be gathered from the statute, certain commissioners were invested with the power to decide whether the proper number of tax-payers had consented. No infirmity appeared on the face of the bonds. They recited that they were issued in pursuance of an act of the legislature, and by duly appointed commissioners. The court held that the purchaser of municipal bonds is charged with notice of the laws of the state which authorized their issue, and of a want of power in the municipality, or its officers, to issue them, and that the recitals in the bonds, when held by a *bona fide* purchaser, are conclusive. The recitals protected such a purchaser. To this point the court (United States circuit court, southern district of New York) cites *Coloma* v. *Eaves*, 92 U. S. 484; *Humboldt Township* v. *Long*, 92 U. S. 642; *Walnut* v. *Wade*, 103 U. S. 683). The gist of the judgment is in these words, which conclude it: "Knowledge by the purchaser of municipal bonds before maturity of their invalidity, when there are no marks of infirmity on the face of the

instrument, and there is no want of power in the muni-
cipality, or its officers, to execute and issue the bonds, is
a question of fact. It being admitted that the purchaser
before maturity for value had no actual notice or suspi-
cion of any defect, and the bonds, in substance, reciting
a compliance with the conditions precedent which were
required by the statute, the arbitrary rule claimed by
the defendant, which declares that he did have construct-
ive notice of a defect, does not exist."

In this case it may be said that the marks of infirmity
are on the face of the deed. The question is, whether
Sullivan acquired by the deed of 1870 the equitable title
of Watson. A just interpretation of the language of the
deed shows that he did not. Sullivan did not have it
when he sold to Baird, and Baird could not transfer it
to Sutro. A vendor cannot convey that which he has
not, nor can a grantee take anything beyond what is
conveyed to him. *Caveat emptor* is the rule in all pur-
chases as to the title, unless stipulated to the contrary.
The purchaser must see that his grantor has the title
which he seeks to acquire. He has the right to call on
his vendor to show that he can sell and convey what he
proposed to sell and convey, and to which the vendee
seeks to acquire an unencumbered legal title in fee; and
if the vendor cannot make such a title, the purchaser
has the right to decline the purchase.

Whether the attorney turned away, and with gross
negligence failed to make inquiry of facts of which he
was put on inquiry, need not be considered here. The
notice and information of the infirmity of Sullivan's title
was given on the face of the papers, and the failure of
the attorney to inquire of Watson could not make Sutro
an innocent purchaser, when the papers furnished him
gave him notice of Watson's interest in the land he de-
sired to purchase. The rules as to notice adopted in this
case are in accord with the judgments in the two cases
referred to above, as cited by counsel. The epithets used

as qualifying negligence in the two cases cited are not applicable here, for the reason that the notice was given on the papers furnished to Sutro's attorney. The error fallen into here by the attorney was not one involving negligence in making inquiry as to facts. It was in misinterpreting a written instrument, which is a question of law.

We see nothing in the instrument (the deed of the 25th of April, 1870) which can work an estoppel against Watson. Watson did not deceive Baird or Sutro. This paper was accessible to both of them before they purchased. If Baird did not see it, it is because he took Sullivan's word for its contents, that it was a family arrangement which allowed him to do with the land as he chose. Baird had a right to have Sullivan produce it for his inspection. If he did not see it, it was because he did not care to see it, on account of Sullivan's representation of its contents. Sutro's attorneys saw it and read it. Watson did not intend to deceive, and did not deceive, either Baird or Sutro. Without the element of deceit there can be no estoppel. (*Davis* v. *Davis*, 26 Cal. 40, 41, et seq.; 85 Am. Dec. 157, and cases there cited.) Neither party was deceived or injured by the conduct of Watson. Under these circumstances, there can be no estoppel. (*Davis* v. *Davis*, 26 Cal. 40, 41, et seq.; 85 Am. Dec. 157, and cases there cited.)

Some other points raised by counsel for appellant remain to be considered. The contention is made that the plaintiff had not a right to maintain this action, and it is said that this is an action under section 752 of the Code of Civil Procedure, which provides that when several co-tenants hold and are in possession of real property, as parceners, joint tenants, or tenants in common, in which one or more of them have *an estate of inheritance,* or for life or lives, or for years, an action may be brought by one or more of such persons for the partition thereof, according to the respective rights

of the persons interested therein. The contention of counsel is, that the plaintiff herein must hold the legal title to whatever interest he claims in the land of which partition is sought, or he cannot maintain such action.

But if the party has an estate of inheritance, it is sufficient. The statute so declares. An equitable estate at common law was an estate of inheritance. The estate is held in trust for the *cestui que trust*, will descend, and may be sold, and transferred by conveyance. Blackstone, in his second book, page 337, uses this language: "The trust will descend, may be aliened, is liable to debts, to execution on judgments, statutes, and recognizances (by the express provision of the statute of frauds), to forfeiture, to leases, and other encumbrances; nay, even to the curtesy of the husband, as if it was an estate at law."

An equitable estate in land is real property, and must descend in case of intestacy as legal estates. This has been so by the statute ever since this state had an existence. (See section 1 of the act of 1850, to regulate descents, etc., Civ. Code, sec. 1384.) " Where any person having title to any estate . . . . shall die intestate, as to such estate, it shall descend," is the language of the first section of the act of 1850. By section 1384 of the Civil Code, all property, real and personal, shall descend, etc. That equitable estates descend, see *Grover* v. *Hawley*, 5 Cal. 486; *Everson* v. *Mayhew*, 57 Cal. 144. In fact, in most cases in this state the difference between equitable and legal estates is of no practical importance. They are both estates originating by law, and held under law, and in that sense are legal estates, and where a court is at liberty to rely on the rule of equity of considering that as done which ought to be done, the difference between an estate so regarded and an estate at law is not worthy of consideration.

The mode of administering law in this state, under our

jurisprudence, is clearly and admirably stated by Crockett, J., in *White* v. *Lyons*, 42 Cal. 252, in these words: " Under the code, there is but one form of action in this state, and if the complaint states facts which entitle the plaintiff to relief, either legal or equitable, it is not demurrable on the ground that it does not state facts sufficient to constitute a cause of action. If the facts stated are such as address themselves to the equity side of the court, the appropriate relief will be granted by the court, sitting as a court of equity. On the other hand, if the facts alleged are purely cognizable in a court of law, the appropriate relief will be administered in that form of proceeding, but a complaint which states a sufficient cause of action either at law or in equity is not demurrable as not stating the facts sufficient to constitute a cause of action." (See also *Wiggins* v. *McDonald*, 18 Cal. 126.) In Pomeroy's Remedies and Remedial Rights, 102, note 1, that learned and able jurist says, in discussing the union of legal and equitable remedies in the same action: " In *White* v. *Lyons*, 42 Cal. 279, Mr. Justice Crockett states the general doctrine in a very accurate and comprehensive manner."

The object of the code being to permit but one form of action, in which either or both legal or equitable remedies may be sought, it would be unwarrantable to hold that this did not apply to actions of partition.

When a court of equity has once obtained jurisdiction, it will do complete justice by deciding the whole case.

As legal and equitable remedies may be sought and had in the same case, especially where they relate to the same subject-matter, we see no reason why the owner of the equitable title may not sue to establish his right, and when so established, if he is a tenant in common, ask for and have a partition of the common estate, as where the reformation of a deed from mistake or fraud is sought, the plaintiff, if he succeeds in procuring the reformation, may sue for and obtain the possession of

the land to which the deed relates, in the same action. Why have two suits, when one is sufficient? Equity will not permit litigation by piecemeal, but will determine the whole controversy, so as to prevent future litigation. (*Irwin* v. *Phillips,* 5 Cal. 144; 63 Am. Dec. 113; *Ord* v. *McKee,* 5 Cal. 515; *Kile & Thompson* v. *Tubbs,* 23 Cal. 431; *McPherson* v. *Parker,* 30 Cal. 456; 89 Am. Dec. 129; *Wilson* v. *Castro,* 31 Cal. 420; *Quivey* v. *Baker,* 37 Cal. 472; *Kraft* v. *De Forest,* 53 Cal. 656; *Cross* v. *Zellerbach,* 63 Cal. 643; *Dorland* v. *Cunningham,* 66 Cal. 484.) The contention we have been considering is not maintainable.

It is urged that the action of the plaintiff is barred by sections 319 and 322 of the Code of Civil Procedure, but as there has been no adverse possession, this cannot be. There has been no adverse possession by any one of the tenants in common. (*Love* v. *Watkins,* 40 Cal. 569; 6 Am. Rep. 624; *Unger* v. *Mooney,* 63 Cal. 586; 49 Am. Rep. 100.) Watson was as much in possession as any of the co-tenants, or if possession was had by the trustee, it was as much the possession of Watson as of the other co-tenants. There was no possession such as to put Watson on inquiry. There was no open repudiation of any trust by Baird, and certainly none ever known to Watson. Watson was certainly ignorant of Baird's declaration of trust, and of Sullivan's conveyance to Baird, until a short time (which was less than five years) before the commencement of this action. The evidence discloses nothing which in any way barred Watson's cause of action.

The court below committed no error in ruling on the admissibility of testimony. We have examined the points in this record made on behalf of defendant, and are of opinion that they are not well taken.

In regard to the motion to dismiss the appeal from the order denying a new trial, from the conclusion reached it is unnecessary to decide it. We will say, however, that we are inclined to think that this appeal was

regularly taken, and the motion should be denied; but we do not wish to be understood as deciding the point.

The power of attorney executed by Bucknall and wife, the plaintiff and wife, and John C. Davis to Eugene Sullivan was offered in evidence, on which some stress is laid as authorizing Sullivan's conveyance to Baird; but as Sullivan does not assume to have acted under this power of attorney in his conveyance to Baird, we do not see that any effect can be given to it in this action. It appears that Sullivan conveyed the property as his own, and not as agent for any one. He claimed to own Watson's interest when he sold and conveyed to Baird. We cannot see anything in this paper to change the conclusion arrived at in this case. Nor does it make any difference that the power of attorney is stated to be coupled with an interest, and irrevocable. If he had acted under it, it should appear that he acted by the procuration of Watson.

The record is without error.

Order affirmed.

SHARPSTEIN, J., and FOX, J., concurred.

WORKS, J., concurring. — I concur. An equitable estate may be one of inheritance. If so, and the title is one under which the party holding it is entitled to possession, I am of the opinion that he may maintain an action for partition.

MCFARLAND, J., dissenting. — I dissent. I do not think that under section 752 of the Code of Civil Procedure an action for the partition of land can be maintained by one who has not title, but has a mere asserted right to compel some one who *has* title to convey it to the plaintiff. He should establish his claim against the one whom he asserts to be his trustee, and settle accounts with him, before bringing the other co-tenants into litigation; at least he should be able to *aver* that he has

title to an estate of inheritance, for life or for years, in the land. And title within the meaning of the said section of the code is, "the means whereby one holds that which he hath," not the right to get that which he hath not. And it has never been held by this court, to my knowledge, that such an action can be maintained. To allow it would be to invite complicated and unnecessary confusion. Of course, when the owner of an undivided estate rightfully commences an action for partition, all persons claiming liens or equitable rights on or in the estates of other co-tenants are properly made defendants from necessity. Otherwise, one tenant in common, by keeping his share covered by liens and trusts, could deprive his co-tenants of their right of partition. And to this extent only have the decisions gone.

I think, also, that, on the merits of the contest between plaintiff and the defendant Sutro, the judgment should have been for the defendant, and therefore should be reversed.