[Civ. No. 3479. Second Appellate District, Division One.—March 18, 1921.]

KIMBALL FLETCHER, Appellant, v. F. H. ALLEN et al., Respondents.

[1] TRUSTS—PURCHASE OF LEASE — GOOD FAITH — CONSIDERATION — WANT OF NOTICE OF INTEREST OF THIRD PARTY.—Where the lessees of certain prospective oil lands purchase all the right, title, and interest of the assignee of their lessor in such lands and in pending actions arising out of and under the terms of the lease, paying a valuable consideration therefor, and without any notice, actual or constructive, that said assignee had entered into a con-

tract with the attorney prosecuting such actions whereby the latter acquired an interest in such lease and pending actions in consideration of his services, the said lessees do not take the property impressed with a trust in favor of said attorney, notwithstanding the said assignee in selling to them violated his agreement with said attorney that no compromise or settlement should be effected without the latter's consent.

[2] ID.—AGENCY—KNOWLEDGE OF ATTORNEY — NOTICE TO CLIENT. — Knowledge by notice to attorney or counsel acquired during the negotiations for a purchase is constructive notice to the client, but the notice must be of a character which would put a prudent man upon such inquiry that if prosecuted with reasonable diligence it would lead to actual knowledge of the true facts with reference to the subject of the transaction.

[3] ID.—AGREEMENT BETWEEN ATTORNEY AND CLIENT—DIVISION OF PROCEEDS—NOTICE OF TRUST.—Notice that a given attorney is to receive, as compensation for services rendered, one-third of the money obtained by his client in the settlement or compromise of certain leases and the litigation arising out of the failure of the lessees to perform the covenants thereof does not constitute notice such as is calculated to lead a reasonably prudent person to prosecute an inquiry as to whether the contract between such attorney and his client, in addition to the personal obligation assumed by the client to such attorney, creates a trust for the latter's benefit.

APPEAL from a judgment of the Superior Court of Los Angeles County. Fred H. Taft, Judge. Affirmed.

The facts are stated in the opinion of the court.

Kimball Fletcher, *in pro. per.*, for Appellant.

Schweitzer & Hutton and A. A. Kidder, Jr., for Respondents.

SHAW, J.—The purpose of this action was to have certain property and rights therein, legal title to which was vested in defendants Warring, Arundell, and Narver, declared to be the subject of a trust in favor of plaintiff.

Judgment went for defendants, from which plaintiff has appealed.

2. Notice to attorney as notice to client, notes, 57 Am. St. Rep. 914; 3 Ann. Cas. 441; 4 A. L. R. 1592.

On November 1, 1910, the Southern Refining Company leased certain prospective oil lands, of which it had the possessory right, to Defendants Warring, Arundell, and Narver. The lease provided that the lessees should, at their own expense, keep up the assessment work on the lands as required by law, and further provided that in case they should fail to commence operations under the terms of the lease by July 4, 1911, they should pay to the lessor the sum of $100 per month for each and every month in which they should make such default in the commencement of operations. The lessees made default in performing the covenants of the lease, and thereupon the lessor, on March 6, 1913, by written instrument transferred and assigned the lease, together with all rights of action arising from the breach thereof, to F. H. Allen who, on March 13, 1913, instituted an action against said lessees to recover as damages the penalty of $100 per month accruing prior to such time. A judgment therein for the sum of $2,469.38 was rendered against defendants, from which they prosecuted an appeal. Thereafter, and while this action was pending on appeal, Allen instituted other actions to recover against defendants for the penalty of $100 per month, in all of which plaintiff acted as his attorney. While these actions were pending, Allen, on March 17, 1916, by written instruments, sold, transferred, and assigned to Warring, Arundell, and Narver all his right, title, and interest in the lease so acquired by him from the Southern Refining Company, together with all right and interest in pending actions arising out of or under the terms of the lease, and entered satisfaction of the judgment in his favor, from which defendants had appealed, for all of which and in consideration of the full acquittance granted to defendants, they, in the nature of a compromise, paid him the sum of $2,469.

As stated, the Southern Refining Company, by a naked assignment in writing, transferred all its interest in the lease to Allen on March 6, 1913. On August 1, 1914, an instrument to which Allen, Bacigalupi, and plaintiff were parties was duly executed, the effect of which was to employ plaintiff as attorney not only in pending litigation therein referred to, but "in all further suits, settlements, or compromises in connection with the contract" in question, and whereby, among other things, it was agreed that out

of any money or property recovered as a result of such litigation, or in settlement or compromise in connection therewith, the amount thereof, less expenditures and costs and sums allowed by the court as attorney's fees which should go to plaintiff, should be divided equally between the parties, by whom it was "further mutually agreed . . . that no settlement or compromise shall be made by any of the parties hereto without the consent of all parties to this agreement."

[1] Plaintiff, under the provisions of section 2219 of the Civil Code, insists that the agreement impressed the property, legal title to which was in Allen, with a trust in his favor to the extent of one-third of such as might be recovered either by suit, compromise, or settlement, and that since the contract provided that no settlement or compromise should be made by Allen without plaintiff's consent, which was not given, the defendants Warring, Arundell, and Narver took the property so acquired from Allen subject to the trust and are involuntary trustees thereof, as provided in section 2243 of the Civil Code.

Section 2219 of the Civil Code provides that "Everyone who voluntarily assumes a relation of personal confidence with another is deemed a trustee, within the meaning of this chapter, not only as to the person who reposes such confidence, but also as to all persons of whose affairs he thus acquires information which was given to such person in the like confidence, or over whose affairs he, by such confidence, obtains any control." And section 2243 of the Civil Code, entitled "Third Person, When Involuntary Trustee," provides: "Everyone to whom property is transferred in violation of a trust, holds the same as an involuntary trustee under such trust unless he purchased it in good faith, and for a valuable consideration." We entertain grave doubt as to whether the contract, as claimed by plaintiff, created an express trust in his favor. However, conceding the contention to be correct and that the acts of Allen were in violation of the trust, defendants could not, under section 2243 of the Civil Code, above quoted, be deemed involuntary trustees if in purchasing the property and interest vested in Allen they acted in good faith and paid a valuable consideration therefor. That they did so act and make such payment appears from the finding "that

the said purchase price ($2,469) was paid by said defendants D. C. Narver, Hugh Warring, and T. F. Arundell to the said F. H. Allen in good faith and without any notice, actual or constructive, prior to or down to the time of the payment of said money, that the plaintiff had any interest whatever in said contract, rights of action, judgments or property referred to in the third amended complaint''; and that at the time of said purchase Allen was in the sole possession of all of said property rights and appeared to be the sole owner thereof. The facts so found, if true, must be deemed a bar to the remedy sought by plaintiff against defendants Warring, Arundell, and Narver. Appellant, however, insists that the finding is not supported by the evidence in that, while conceding the defendants had no personal knowledge of plaintiff's rights, it nevertheless shows their attorneys received notice, the character of which was such as to put a reasonably prudent man upon inquiry as to plaintiff's rights, and that such notice must be imputed to defendants, who as principals must be deemed chargeable with constructive notice.

[2] "Knowledge by notice to attorney or counsel or agent acquired during the negotiations for a purchase is constructive notice to their principal." (*Watson* v. *Sutro,* 86 Cal. 500, [24 Pac. 172, 25 Pac. 64].) Whether constructive or actual, the notice must be of a character which would put a prudent man upon such inquiry that if prosecuted with reasonable diligence it would lead to actual knowledge of the true facts with reference to the subject of the transaction. (2 Pomeroy's Equity Jurisprudence, 3d ed., secs. 597, 599; *Bank of Mendocino* v. *Baker,* 82 Cal. 114, [6 L. R. A. 833, 22 Pac. 1037].) Conceding the law as stated, appellant insists that the evidence shows that one of the attorneys for defendants had sufficient notice to put him upon inquiry as to the plaintiff's interest in the subject of the controversy. As appears therefrom, the lease provided that defendants should pay $100 per month as a penalty for each and every month during which they failed to comply with certain terms thereof. Under this provision, an action had been instituted by Allen wherein a judgment was recovered, and other actions for accruing penalties were pending, in all of which and during the entire time that

Allen owned the lease, plaintiff had acted as counselor and attorney for him, and Schweitzer & Hutton and A. A. Kidder had during said time acted in like capacity for defendants. Pending the appeal from the judgment obtained in the first action instituted against defendants to recover the penalties stipulated in the lease, the negotiations which culminated in a settlement of all controversies growing out of the lease were commenced. The testimony of plaintiff tends to show that he acquainted Mr. Kidder with the fact that he had an interest in the lease. This testimony, however, is flatly contradicted by Kidder, who further stated that he was never informed by anyone that Allen was not the real owner of the lease and rights assigned by him to defendants, nor apprised of the fact that Fletcher had any interest therein other than as an attorney representing his client. That in a conversation had with Mr. Allen, wherein the latter stated that he and Fletcher did not agree as to what should be exacted in settlement, he mentioned $2,500 or $3,000 in cash as a sum which he would be willing to accept, and further stated that his arrangement with Fletcher was that in case he recovered a judgment and collected it, he would pay Fletcher one-third. Plaintiff himself testified that in response to an offer of $2,000 made by Mr. Hutton in settlement of the whole proposition, he said that he did not think the amount was sufficient, but that if Allen and Bacigalupi were anxious to settle the matter, he did not want to stand in their way, but would advise them it was too small. In our opinion, the evidence, while conflicting, is sufficient to support the finding upon which the judgment is based.

[3] Considering the entire record, it is apparent therefrom that plaintiff relied upon Allen's covenant that he would make no compromise of the matter without the former's consent, and that neither he nor Allen made any disclosure of a contract existing between them, other than that out of the proceeds received by Allen he was to pay plaintiff, as compensation for the services rendered, one-third thereof. Such an agreement between an attorney and his client is not unusual, and there is nothing in notice of such fact which is calculated to lead a reasonably prudent man to prosecute an inquiry as to whether such contract,

in addition to the personal obligation assumed by the client to his attorney, creates a trust for the latter's benefit.

The judgment is affirmed.

Conrey, P. J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 16, 1921.