[Civ. No. 2783. Second Appellate District, Division One.—January 3, 1919.]

## PATRICK FARRELL, Appellant, v. CITY OF ONTARIO (a Municipal Corporation), et al., Respondents.

JURY TRIAL—CONSTITUTIONAL GUARANTY—COMMON LAW.—The right to trial by jury guaranteed by section 7 of article I of the state constitution was the right as it existed at common law in 1850, which, under section 4468 of the Political Code, is the rule of decision in this state.

ID.—INJUNCTION — ACTION TO RESTRAIN VIOLATION OF COMMON-LAW RIGHT.—Under the English common law as it stood in 1850, "if a plaintiff applies for an injunction to restrain a violation of a common-law right, if either the existence of the right, or the fact of its violation be disputed, he must establish that right at law," or, in other words, by a jury, if one be demanded.

ID.—DIVERTING STORM WATERS TO PLAINTIFF'S LANDS — ACTION FOR DAMAGES AND FOR INJUNCTION—RIGHT TO JURY TRIAL.—In an action for damages for diverting storm waters to plaintiff's lands by means of a ditch and culvert and to abate the alleged nuisance and restrain its further maintenance, the parties were entitled to a jury trial upon the issue as to damages, and the verdict of the jury thereon was binding.

ID.—RIGHT TO JURY UNAFFECTED BY CODE PROVISION.—The right to a jury trial in such action is in no way affected by the provisions of section 731 of the Code of Civil Procedure.

ID.—SPECIAL FINDINGS—CONSISTENCY WITH GENERAL VERDICT.—Where in an action for damages for diverting storm waters to plaintiff's land, the jury by special findings found that the storm and flood that occasioned the damage were unprecedented, such special findings were not inconsistent with the general verdict for the plaintiff in the absence of any finding that the unprecedented character of the storm was the sole cause of the injuries, since that fact would constitute no defense if any negligent or wrongful act of the defendant contributed with it to cause the injuries, and, in support of the general verdict, an appellate court must assume that the jury also found such contributing wrongful acts on the part of the defendants.

ID.—DENIAL OF JURY—MISCARRIAGE OF JUSTICE.—The denial of the right of trial by jury to a party entitled thereto is, in itself, a miscarriage of justice, and cannot be deemed harmless error under section 4½ of article VI of the constitution.

ID.—VERDICT—EFFECT ON EQUITABLE ISSUES.—In an action for damages for diverting storm waters upon plaintiff's land, and for an injunction to restrain a continuance of the nuisance, the verdict of the jury, while conclusive upon the issue as to damages, subject only to the power of the court to set it aside on motion for new trial, is in no sense conclusive as to the equitable issues, which are to be determined by the court upon findings of fact made by it.

ID.—JUDGMENT ON VERDICT—ENTRY BY CLERK PREMATURE.—Where in such action the clerk, of his own motion, entered judgment for the plaintiff on the general verdict, the judgment so entered was premature and of no effect, since there were issues of purely equitable cognizance which the court alone could determine and which had not then been determined.

ID.—MOTION FOR NEW TRIAL PREMATURE.—In such case a motion for new trial was also premature and of no effect.

APPEAL from a judgment of the Superior Court of San Bernardino County. J. W. Curtis, Judge. Reversed.

The facts are stated in the opinion of the court.

Joseph Scott, A. S. Maloney and A. G. Ritter for Appellant.

Archie D. Mitchell, R. S. Parker and E. H. Jolliffe for Respondents.

MYERS, J., *pro tem.*—Plaintiff appeals from a judgment in favor of defendants. He concedes its correctness, however,

as to the defendants other than the city of Ontario. Plaintiff, as the owner of certain lands situate a short distance south of the southerly limits of that city, charges the defendants with having constructed a certain ditch and culvert, the effect of which was to divert storm waters upon plaintiff's lands to their injury. It is alleged that in January, 1916, large quantities of storm waters were so diverted upon plaintiff's lands, to his damage in the sum of ten thousand dollars, and that if defendant city is not restrained from maintaining said ditch and culvert they will continue to divert waters upon plaintiff's lands during the winter season of each year, to plaintiff's further and irreparable damage. The prayer is for damages and for an injunction abating the alleged nuisance and restraining its further maintenance.

The case was tried before a jury which, on February 14, 1917, returned its general verdict in favor of the plaintiff as against the defendant city alone in the sum of two thousand five hundred dollars. It also returned therewith its special verdict in answer to eight interrogatories submitted by the court. On the following day the clerk, of his own motion, entered judgment for the plaintiff on the general verdict. Thereafter, within ten days, defendant served and filed notice of its intention to move for a new trial and notice of motion for judgment for defendant on the special findings of fact, under section 663 of the Code of Civil Procedure, subdivision 2. These two motions were argued and taken under submission by the court, which thereafter, on July 11, 1917, without ruling upon either of the motions, filed its written opinion ordering findings and judgment for the defendants. From the judgment entered pursuant thereto upon findings made by the court this appeal is prosecuted.

Appellant's position is twofold: 1. That the judgment in favor of plaintiff, entered February 15, 1917, not having been vacated or modified and no appeal having been taken therefrom, has become final, and that defendant's motion for a new trial has been automatically denied by the lapse of time under section 660 of the Code of Civil Procedure. 2. That the plaintiff was entitled as of right to a trial by jury, at least upon the issues as to damages, and that the verdict was, therefore, binding upon the court and could be vacated only under the power vested in the court under proceedings for a new trial, which power was not here exercised.

39 Cal. App.—23

Taking up the second point first, we find two divergent lines of decision in this state, the decisions in one group apparently ignoring those in the other group and no apparent attempt having been made to reconcile them.   The one group is illustrated by the case of *Hughes* v. *Dunlap,* 91 Cal. 385, [27 Pac. 642], wherein it was held, in an action for damages for trespasses upon land and for an injunction to restrain future repetitions thereof, that the action for damages was a legal remedy as to which the parties were entitled to a jury trial, and that the verdict of the jury thereon was binding upon the court.   This case was followed and approved in the recent case of *Moore* v. *San Vicente Lumber Co.,* 175 Cal. 212, 214, [165 Pac. 687], which was an action for the abatement of a nuisance by injunction and for damages.   The other group is illustrated by the cases of *McLaughlin* v. *Del Re,* 64 Cal. 472, [2 Pac. 244] ; *Sullivan* v. *Royer,* 72 Cal. 248, [1 Am. St. Rep. 51, 13 Pac. 655] ; *Churchill* v. *Baumann,* 104 Cal. 369, [36 Pac. 93, 38 Pac. 43] ; *Richardson* v. *City of Eureka,* 110 Cal. 441, 446, [42 Pac. 965] ; *McCarthy* v. *Gaston Ridge etc. Co.,* 144 Cal. 542, 545, [78 Pac. 7] ; holding that in such case the prayer for damages is but incidental to the principal relief sought, which is of equitable cognizance, and that, therefore, the verdict of a jury thereon is merely advisory and may be disregarded by the trial judge upon whom rests the responsibility of finding the facts.

The decision in *Hughes* v. *Dunlap* appears to be based upon the sounder reasoning.   According to the allegations of his complaint, plaintiff had two rights of action and was entitled to two remedies, of which he might pursue either or both at his election, the legal remedy of damages for past injuries suffered and the equitable remedy of injunction to prevent their recurrence in the future.   He might have prosecuted separate actions for these two remedies concurrently.   In that case the facts alleged in the two actions would have been the same, except that in the action at law he would have alleged the money value of the injuries suffered, and in the suit in equity he would have alleged the facts showing a threat of future repetitions thereof.   Under those circumstances it will be conceded that the plaintiff would have been entitled as of right to a trial by jury of the legal issues as to damages.   Instead of doing this, he accepted the invitation held out to him by our laws and joined his two actions in one.   He should

not be held to have thereby forfeited his right to a jury trial of the legal issues, unless the reason for so holding is clearly apparent.

The rule followed in the decisions of which *McCarthy* v. *Gaston Ridge etc. Co., supra,* is an exemplar, finds support in the decisions of the courts of some of the other states, notably those of New York and Iowa. It seems to us to have grown out of an unnecessary and unwarranted application of a recognized doctrine of equity jurisprudence, to wit, the rule "that when a court of equity has jurisdiction over a cause for any purpose, it may retain the cause for all purposes and proceed to a final determination of all the matters at issue." (Pomeroy's Equity Jurisprudence, secs. 181, 236; *Watson* v. *Sutro,* 86 Cal. 500, 528, [24 Pac. 172, 25 Pac. 64] ; *Becker* v. *Superior Court,* 151 Cal. 313, 316, [90 Pac. 689].) This rule, both in its origin and in its application, wherever the jurisdiction at law and in equity was vested in separate tribunals, had for its reason and its purpose the avoidance of a multiplicity of actions. Where, under the "reformed procedure," issues at law and in equity may be tried before the same tribunal and in the same action, this reason ceases to exist. There is no occasion in this state for the application of the rule that equity once taking jurisdiction will retain it for the purpose of disposing of the entire case, because here the *court,* may dispose of the entire case without the necessity of trying it as a case wholly of equitable cognizance. Here the court, having jurisdiction, may hear and determine the equitable issues according to the rules of equity, and the legal issues in accordance with the rules of law, both in the same action.

The doctrine that equity once having taken jurisdiction will retain it for the purpose of disposing of the entire case, was limited and safeguarded in its application under the former procedure by another rule equally well established, namely, that where the title of the plaintiff is doubtful or the violation of his right by the defendant is not clear, he will be required to first establish his title, his right, and the violation thereof, in an action at law, *before* equity will entertain his application for extraordinary relief. (High on Injunctions, sec. 8; 29 Cyc. 1228, and cases cited.) Under this rule, if the plaintiff had filed in a court of purely equitable jurisdiction the complaint upon which this action is based and the defendant had made answer thereto, as it did here, denying plaintiff's

title to the land alleged to have been injured, denying the diversion of waters and denying the alleged injuries to the land, the court would have said to the plaintiff, in effect, "You must first go into a court of law and there establish these disputed claims of right upon which you are basing your claims for relief; if you succeed in establishing there your legal rights, we will then entertain and consider your petition for equitable relief." And, of course, in such action at law, the parties would have been entitled to a jury whose verdict would have been binding upon the court and subject to be set aside only upon motion for a new trial.

By analogy, then, it would seem that where, as under our procedure, parties are permitted to submit both their legal rights and their equitable rights to the same tribunal for adjudication at the same time, the right to a jury trial with respect to the former, which was adequately safeguarded under the old system, should be equally respected under the new. That would seem to be the effect of our constitutional guaranty. (Art. I, sec. 7.) The right to trial by jury thus guaranteed was the right as it existed at common law. (*Koppikus* v. *State Capitol Commrs.*, 16 Cal. 248, 253; *Cauhape* v. *Security Savings Bank*, 127 Cal. 197, 202, [59 Pac. 589].) The purpose of the amendment of 1874 to section 592 of the Code of Civil Procedure was to make it conform thereto. (*Vallejo etc. R. R. Co.* v. *Reed Orchard Co.*, 169 Cal. 545, 556, [147 Pac. 238].) It follows, therefore, that the common-law rule respecting the right to trial by jury as it existed in 1850 is the rule of decision in this state. (Pol. Code, sec. 4468; *Martin* v. *Superior Court*, 176 Cal. 289, [L. R. A. 1918B, 313, 168 Pac. 135, 136].)

It is material, therefore, to ascertain what was the rule of the English common law upon this subject in 1850. The case of *Walter* v. *Selfe*, 4 De Gex & S. 315, was decided in 1851, upon a bill filed in July, 1850, for the abatement of a nuisance by injunction. Both parties stipulated that all of the issues should be tried in equity without a jury. The vice-chancellor in the course of his opinion said: "Certainly, I should, whether granting or not granting a provisional injunction, have directed an action or an issue, for the purpose of trying the material questions of fact raised by the bill and affidavits. But the counsel for each party having requested me not to do so, and also not to send a case for the opinion of a Court of

law, I consented to decide it without assistance. It appears to me that, in the present instance, the defendant, as well as the plaintiff, declining to go before a jury, and asking the Court of Chancery to decide between them without assistance in any shape from a Court of law, I ought to grant an injunction." The case of *Imperial Gas Light & Coke Co.* v. *Broadbent,* 7 H. L. Cas. 601, was decided in 1859 upon a bill in equity filed in 1856 (and, therefore, prior to the chancery amendment of 1858), to abate a nuisance by injunction. The lord chancellor (Lord Campbell) said: "There is no doubt whatever that before a perpetual injunction can be granted, the party applying for it must establish his right by a proceeding at law." Lord Kingsdown, concurring, said: "The rule I take to be clearly this: If a plaintiff applies for an injunction to restrain a violation of a common-law right, if either the existence of the right or the fact of its violation be disputed, he must establish that right at law; but when he has established his right at law, I apprehend that unless there be something special in the case, he is entitled as of course to an injunction to prevent a recurrence."

So far as we have been able to ascertain, there were no statutory enactments in England between 1850 and 1858 affecting the right of trial by jury in connection with suits to abate nuisances. These decisions may be taken then as determinative of the proposition that, under the English common law as it stood in 1850, at the time it was adopted as the rule of decision in this state, "if a plaintiff applies for an injunction to restrain a violation of a common-law right, if either the existence of the right or the fact of its violation be disputed, he must establish that right at law"; or, in other words, by a jury, if one be demanded. We conclude, therefore, that the parties here were entitled to a jury trial upon the issues as to damages and that the verdict of the jury thereon was binding. We do not regard the provision of section 731 of the Code of Civil Procedure as in any way affecting that right. If the jurisdictions in law and equity were here separately vested, it might well be held that the plaintiff, by filing in equity a complaint such as is here presented, had thereby elected to submit *all* the issues for determination by the court, and thereby waived his right to a jury trial on the legal issues; but where, as here, all such issues may be tried in the one action, no reason for such holding appears.

It is the contention of the respondent that the special findings of the jury are inconsistent with the general verdict, and that, therefore, the latter cannot stand in any event. Plaintiff's land was situated on the southerly side of Walnut Street, opposite the intersection thereof with Fern Street. Plaintiff's contention was that the acts of the defendants caused the storm waters to enter his land opposite that point of intersection. Defendants' contention was that the storm waters had always naturally flowed across plaintiff's land at that point. In findings Nos. I, II, and VI, read together, the jury found that prior to the acts of the defendants the storm waters naturally flowed "southwesterly to Fern and Walnut streets," but that none of them entered upon plaintiff's land to the south of Walnut Street. By finding No. III they found that the act of the defendant city caused a substantial change of the place at which the waters flowed southerly from Walnut Street. Applying the rule adopted by the supreme court in *Law v. Northern Assur. Co.*, 165 Cal. 394, 406, [132 Pac. 590, 596], that "no presumption will be indulged in favor of answers of the jury to special interrogatories as against the general verdict; but, on the contrary, every reasonable intendment in favor of the general verdict should be indulged, and all parts of the verdict are to be reconciled in support thereof if it can reasonably be done," we construe the findings to mean that prior to the acts complained of the storm waters were wont to reach the street which formed the northern boundary of plaintiff's land, but did not flow southerly therefrom except at a point outside of plaintiff's boundaries; and that the acts of the defendants caused these waters to be discharged upon plaintiff's lands at a point where they had never flowed before. Thus construed, these findings are wholly consistent with the general verdict. This appeal is not from the judgment upon that verdict, nor from an order upon motion for new trial, and we are, therefore, not concerned here with the question whether or not those findings are supported by the evidence.

By findings Nos. V and VI the jury found that the storm and flood of January, 1916, were unprecedented. This, of course, is not inconsistent with the general verdict, in the absence of any finding that the unprecedented character of such storm and flood was the *sole* cause of the injuries. That fact would constitute no defense if any negligent or wrongful act of the

defendants contributed with it to cause the injuries. (*Chidester* v. *Consolidated Ditch Co.*, 59 Cal. 197, 202.) In support of the general verdict, we must assume that the jury also found such contributing wrongful acts on the part of the defendants. (*Tremble* v. *Tuman*, 175 Cal. 696, [167 Pac. 142].) The remaining special findings are not claimed to be inconsistent with the general verdict.

Respondent urges that the decision of the court, as embodied in the findings and conclusions drawn by it, is a just one under the evidence, and that, therefore, its reversal is precluded by section 4½, article VI, of the constitution. It may be doubted that this section applies to a situation such as is here presented; but assuming that it does, we do not hesitate to hold that the denial of the right of trial by jury to a party entitled thereto is, in itself, a miscarriage of justice.

The verdict of the jury, while conclusive upon the issues as to damages (subject only to the power of the court to set it aside on motion for new trial), is in no sense conclusive as to the equitable issues. They are to be determined by the court upon findings of fact made by it. "Of course it is always for the judge sitting as a chancellor to determine whether, when certain rights are established, he will grant an equitable remedy prayed for, or compel a party to be satisfied with his legal remedy." (*Hughes* v. *Dunlap*, 91 Cal. 385, [27 Pac. 642].) Appellant contends that the allegations of the complaint upon which the prayer for equitable relief is directly predicated are admitted by the failure to deny them in the answer. This is true with respect to the allegations of the probability of future injuries. The other allegations so referred to by appellant, while not categorically denied, are sufficiently traversed by affirmative allegations in the answer inconsistent therewith.

To appellant's contention that the judgment entered by the clerk upon the verdict has now become final, in the absence of any appeal therefrom, we cannot assent. The clerk was without authority to enter that judgment at that time. There were issues of purely equitable cognizance which the court alone could determine and which it had not then determined. (*Churchill* v. *Louie*, 135 Cal. 608, 612, [67 Pac. 1052].) Therefore, the trial of the action had not been concluded and the judgment so entered was premature and of no effect. (*Vallejo etc. R. R. Co.* v. *Reed Orchard Co.*, 169 Cal. 545, 558,

[147 Pac. 238].) It follows from this that the motion for new trial was also premature and of no effect.

The judgment appealed from is reversed and the cause remanded to the superior court, with direction to enter judgment in accordance with the general verdict upon the issues as to damages, and appropriate to such findings of fact as it shall make upon such evidence as may be taken before the court as to the equitable issues.

Conrey, P. J., and James J., concurred.