[Civ. No. 1669.    Fourth Appellate District.—April 2, 1937.]

UNION OIL COMPANY OF CALIFORNIA (a Corporation), Respondent, v. RECONSTRUCTION OIL COMPANY (a Corporation) et al., Appellants; LOUIS ELMER PARKER et al., Interveners and Respondents.

Newby & Newby for Appellants.

Eugene H. Blanche, Mortimer A. Kline, Paul M. Gregg, Andrews & Andrews and Lawler & Degnan for Respondents.

JENNINGS, J.—Plaintiff, as lessee of certain land under an oil and gas lease in the Signal Hill Field, instituted this action on July 13, 1934, to enjoin defendants from continuing the drilling of an oil well known as Hines No. 1 well which was alleged to have been located approximately 60 feet west from the southwest corner of plaintiff's lease and which in the process of drilling deviated from the vertical and entered and trespassed upon plaintiff's lease. Plaintiff's lessors were permitted to intervene in the action and complaints in intervention were filed by them whereby substantially the same relief as that sought by plaintiff's complaint was prayed. On August 22, 1934, plaintiff filed with the court wherein the action was pending a petition for permission to conduct a subsurface survey of Hines No. 1 well for the purpose of ascertaining the precise location and course of said well. The petition was granted over the objection of defendants by entry of an order for such survey on August 27, 1934. An appeal from this order was promptly taken by defendants on the date of the issuance of the order. An attempt to conduct a subsurface survey of the well was made on August 28, 1934, but was unsuccessful because of the refusal of those defendants who then had charge of the drilling of the well to permit such survey to be made. On August 30, 1934, on application of the plaintiff, the trial court made an order directing the defendants to show cause on September 7, 1934, why they should not be restrained and enjoined from bringing the well to production or completing the drilling thereof pending trial of the action and further ordering that, pending the hearing of the order to show cause, defendants be restrained and en-

joined from completing the well or bringing it to production. This order was served on the defendant, Felix Gillespie, who was then directing the drilling of the well on August 30, 1934, and on certain other persons, including the defendant Nathan Newby, Jr., on the following day. The well was brought to production on August 30, 1934. On September 20, 1934, the order to show cause came on for hearing and on September 22, 1934, the court made its order granting a temporary injunction pending trial of the action. On October 8, 1934, plaintiff filed with the court a second petition for an order directing a subsurface survey of the well to be made and on October 13, 1934, the court, over the objection and despite the opposition of defendants, made an order granting the petition and directing that such survey be made by two designated surveying companies and instructing the sheriff of Los Angeles County to enforce execution of the order. This order was executed and surveys of the well were conducted by the surveyors appointed by the court between the dates of November 2, 1934, and November 8, 1934. Trial of the action was begun on January 14, 1935, and was submitted for decision on February 6, 1935. On May 22, 1935, the trial court rendered judgment in favor of plaintiff and the interveners herein, whereby it was decreed that the defendants and their employees were permanently enjoined from operating Hines No. 1 well and from pumping or removing petroleum and gas or other hydrocarbon substances from said well. The judgment expressly ordered the defendants Reconstruction Oil Company, a corporation, Nathan Newby, Jr., Paul D. Newby, and Felix Gillespie to plug up and abandon all of said well below a measured length of 1700 feet from the surface of the ground. The judgment further provided that the plaintiff and interveners should recover from the last-mentioned defendants the sum of $22,557.05 together with interest thereon and the costs of suit. From this judgment the defendants have prosecuted the present appeal.

Before giving consideration to the contentions advanced in support of the appeal herein it will be proper to mention certain facts which relate to the history of the Hines No. 1 well that were developed during the trial of the action. The drilling of this well was commenced during the month of March, 1934, by the defendant, Marine Development Corporation, which was the lessee of the land whereon the well was located.

Active control and management of the drilling operations was then in the hands of the defendants, D. L. Mayhew and Carl C. Campbell, who had considerable experience in work of this character. The defendant E. D. Marr was president, D. L. Mayhew, vice-president, E. J. Evans, secretary, and the defendants H. L. Rose, Jr., and Carl C. Campbell were directors of the Marine Development Corporation. For the sake of convenience this group of defendants will hereinafter be called the Marine defendants. During the month of February, 1934, the defendant H. L. Rose, Jr., who in addition to being a director of the Marine Corporation, also acted as attorney for said corporation presented to the commissioner of corporations of the state of California an application by the Marine Corporation for permission to issue certificates of stock in said corporation. At the time this application was filed Rose was advised by the deputy commissioner to whom he presented the application that it was the policy of the state corporation department to require affidavits with respect to directional drilling of oil wells from corporations that were engaged in drilling such wells in certain areas. Subsequently and after investigation of the application this deputy telephoned Rose and informed him that an affidavit on behalf of the Marine Corporation and its directors stating that it was not the intention of the corporation and its directors to trespass upon or under neighboring premises would be required to be filed before a permit for issuance of stock could be granted. A letter to this effect was addressed to Rose by the deputy commissioner on March 6, 1934, and on March 14, 1934, another letter was sent to Rose referring to the prior communication and containing a quotation from the rules of practice of the department to the effect that failure to file requested additional data might be considered sufficient cause for dropping an application and concluding with the statement that unless the requested affidavit were received on or before March 21, 1934, it might be necessary to abandon the pending application for issuance of stock. No affidavit was filed with the state corporation department and the application for a permit to issue stock was never granted.

In the meantime drilling operations which, as above stated, were begun during the month of March, 1934, by the Marine defendants were being continued. At an early stage in these operations Mayhew and Campbell suspected that the well was

deviating from the perpendicular. Some 25 or 30 "single shot" surveys were accordingly run during the time that drilling operations were carried on by the Marine defendants. The purpose of making these surveys was to discover whether or not deviation from the perpendicular was occurring and the direction of such deviation. The results of these surveys were shown by certain photographic discs or buttons which were turned over to Mayhew and Campbell by the persons who made the surveys. On numerous occasions during the progress of the drilling which was performed by the Marine defendants directional or deviational tools consisting of whipstocks, Lucey spud bits, and knuckle joints were employed for the purpose of changing the direction which the well was taking in the course of drilling.

On March 23, 1934, the plaintiff addressed a letter to the Marine Development Corporation stating that plaintiff was informed that the Marine Corporation was drilling an oil well which was located a short distance from the outer boundary line of plaintiff's lease. It was observed that the science of drilling for oil had reached a stage where the making of a hole might be so controlled and directed that the well could be completed under lands that were somewhat distant from the original location of the well. Warning was given that, in view of the location of Hines No. 1 well, the Marine Corporation must not permit its well in the process of drilling to come within the boundary line of plaintiff's lease or to produce oil or gas from the land leased by plaintiff and demand was made that the Marine Corporation should take all necessary steps to prevent such trespass or the conversion of oil or gas. Copies of this communication were served on E. D. Marr, as president of the Marine Corporation and on D. L. Mayhew as vice-president of said corporation. On April 17, 1934, a conference was held in the city of Los Angeles between the defendants Marr, Evans and Rose and certain persons representing the plaintiff. The evidence relating to statements that were then made by certain of the above-mentioned defendants respecting the location at that time of Hines No. 1 well was conflicting but evidence was produced which indicated that the defendant Marr then stated that the Marine defendants had expended considerable time and money and had experimented with various types of tools in an effort to remove the well from the plaintiff's property but that up to

that time they had been unsuccessful in the attempt. There was also testimony given by the witness Stokenbury regarding a conversation which he had with the defendant Campbell about April 22 or 23, 1934, in which Campbell stated "that he was under the Union Oil Company property but wanted to get off".

The Marine defendants continued to drill the well until May 4, 1934. Prior to this date the well had been drilled to a depth of 3,995 feet at which time a cement plug was placed in the hole. On June 18, 1934, the Reconstruction Oil Company was incorporated in the state of Nevada for the purpose of taking over the well and completing the drilling of it. The defendant Paul Newby became president and the defendant Nathan Newby, Jr., secretary of this corporation. On June 18, 1934, the Reconstruction Corporation entered into a written contract with the Marine Corporation whereby the latter agreed to assign its leasehold interest in the land whereon the well was located to the former and the Reconstruction Company agreed to continue drilling the well and to use its best efforts to place it on production. In accordance with this contract the Reconstruction Corporation entered into possession of the premises and assumed control of the well on June 18, 1934. On this same date the Reconstruction Oil Company entered into a contract with the defendant Felix Gillespie whereby the company agreed to place Gillespie in possession of the well for the purpose of "drilling and placing the same on production" and that it would furnish to Gillespie all necessary tools and machinery to drill the well to an approximate depth of 5,100 feet and that it would pay him $200 per day for every day that he remained in possession of the well and continued drilling operations. Of the specified daily amount thus agreed to be paid to Gillespie it was provided that $50 should be paid in cash and the remaining $150 should be paid "out of 15% of the oil produced and saved from said well". Gillespie agreed to furnish all necessary labor and mechanical skill required in drilling the well and placing it on production. Gillespie thereupon assumed control of the drilling of the well and continued in charge of such operations until the well was placed on production. The defendants Paul D. Newby, Nathan Newby, Jr., and Felix Gillespie are referred to in the findings as the Reconstruction defendants and will herein

be so termed when it is desired to mention this group of defendants.

On July 7, 1934, a letter was sent by plaintiff's counsel to the Reconstruction Oil Company warning said company that, in the drilling operations being carried on at Hines No. 1 well by this company, it must not cause or permit the well to trespass on plaintiff's lease or to produce oil or gas therefrom. On July 10, 1934, the attorneys for the Reconstruction Corporation replied to the above-mentioned letter assuring the plaintiff and its counsel that it was not the intention of the Reconstruction Corporation to infringe upon plaintiff's legal rights. On July 11, 1934, plaintiff's attorneys addressed a reply to the last-mentioned communication suggesting that the course and direction of Hines No. 1 well should be ascertained by subsurface survey which might be accomplished by some mutually acceptable surveyor and expressing willingness to apportion fairly the cost of such survey between plaintiff and the Reconstruction Corporation. Additional correspondence between the attorneys for plaintiff and the Reconstruction Company resulted in a declination by the company to permit the survey to be made. After the commencement of this action the orders providing for subsurface surveys to which reference has heretofore been made were procured from the court wherein the suit was pending. Appeals taken from these orders were dismissed by the Supreme Court on October 30, 1935, on the express ground that said orders were not appealable orders. (*Union Oil Co.* v. *Reconstruction Oil Co.*, 4 Cal. (2d) 541 [51 Pac. (2d) 81].)

The results of the survey which was made during the month of November, 1934, by Alexander Anderson, Inc., were received in evidence over the objections of the defendants. These results which obviously constituted evidence most important to plaintiff's case indicated that all of Hines No. 1 well below a depth of 1700 feet was wholly upon and within the property covered by plaintiff's lease.

The first contention advanced by appellants on this appeal is that there was a serious and fatal irregularity which occurred during the trial of the action which requires reversal of the judgment. This irregularity consists in the fact that after the trial of the suit which was instituted in Los Angeles County and was being heard in a department of the superior court of that county in the city of Long Beach

had proceeded for several days, the trial court acceded to a suggestion of attorneys representing respondent that the court and counsel should go to the city of Fullerton in Orange County for the purpose of inspecting the apparatus used by the surveyor in making the subsurface survey of the well and that while the court was in Fullerton for the above-mentioned purpose it should hear the testimony of certain employees of the company which had performed the survey. This course was accordingly pursued and the court proceeded to Fullerton and in addition to making observation of the machinery and equipment used in making the survey the record shows that the trial court then heard the testimony of six witnesses who were called by respondent. All of the witnesses who were there examined were employees of Alexander Anderson, Inc., the corporation which had made the subsurface survey of Hines No. 1 well. These witnesses explained the manner in which they prepared the records and made various calculations and computations from the photographic films that were taken during the course of the survey. The record also shows that, when it was suggested that the court should go to the laboratory of the Alexander Anderson, Inc., in Fullerton, appellants' counsel made the following statement: "We will not raise the objection that it is in Orange County, Your Honor, as far as that is concerned. If the court thinks it would be adding anything to the light, we have no objection." It also appears that appellants' counsel were fully advised that evidence would be offered during the visit to Fullerton since, after the suggestion regarding the trip to Fullerton was made and in objecting to the reception of certain documentary evidence, counsel made the following statement: "I am not urging, as a ground of the objection, that the young ladies and the men of Mr. Anderson's organization have not yet testified as to their part—we take it that they are going to do that later; that is what we are going over there for." It also appears that, prior to the last-quoted statement, appellants' counsel had been apprised that witnesses would be examined at Fullerton by the following statement which was made by the trial court: "The court made an order that, with the consent of the parties, we convene tomorrow morning at 10:00 o'clock at Mr. Anderson's plant in Fullerton, and there make, take the testimony of such witnesses as the counsel may agree upon and view the plant and appliances that Mr. An-

derson has at that location." Neither at the time the foregoing statement was made nor later in the same day when, at the time of adjournment, the court said, "At this time we will take a recess until 10 o'clock tomorrow morning and we will convene at Fullerton" did appellants' counsel offer any objection or suggest any reason why the court should not go to Fullerton and there follow the course which it had announced it expected to follow. The record further shows that, on the morning of January 23, 1935, when the court and counsel met at the Anderson plant in Fullerton, appellants' counsel made the following statement: "I am willing to stipulate only that we have met at Fullerton, and that we take the testimony of different witnesses that are present here, the young ladies, as I understand—and my idea was that their work, their methods was the thing you wanted especially illustrated." Respondents' counsel thereupon suggested that the stipulation should also show that, preliminary to the taking of testimony, the court and counsel had inspected the Anderson plant and the various devices used by Anderson in making subsurface surveys. To this suggestion appellants' counsel replied as follows: "No objection to that. The only qualification I was making was that could only be for the purpose of illustration and could not be considered as evidence in this case." The court then said: "Very well. Then let that stand as the stipulation."

Appellants now argue that the court had no jurisdiction to hold a session in Orange County and that the fact that it permitted each of the six witnesses who testified in Fullerton to be sworn by a deputy clerk of Los Angeles County who had no authority to administer an oath outside the county of Los Angeles renders void the entire judgment which is based in part on evidence which it is claimed was thus erroneously received.

It is our opinion that the question thus presented is not a question of jurisdiction. There is no suggestion that the trial court lacked jurisdiction to hear and determine the cause. It is apparently appellants' contention that when the court left the territorial boundaries of Los Angeles County and received the testimony of certain witnesses in another county, it lost the jurisdiction which it admittedly possessed so long as it remained in Los Angeles County and that it had no power to receive evidence in Orange County and the evidence thus

erroneously received may not be considered in support of the findings drawn by the court and the judgment finally entered in the action.

The point thus raised is novel and no authority which directly bears upon the question is cited. The nearest factual approach to the situation here presented appears in the case of *People* v. *Pompa,* 192 Cal. 412 [221 Pac. 198]. It appears that during the trial of this case wherein the defendant was charged with the commission of first degree murder and was convicted the district attorney moved that the jury be taken to view the premises where the crime was committed. No objection to this procedure was then offered by the defendant. The court thereupon ordered that the jury be taken to view the scene of the crime and remarked that no argument would be permitted during the visit and that no testimony would there be taken. However, during the view of the premises, the individual whom the court had appointed to show the premises was directed by the court to point out and designate various parts of the premises. This he did and in so doing he was asked questions both by the judge and by certain jurors. To the questions thus asked and the precedure thus followed no objection was interposed. It was, however, later during the trial particularly objected that testimony had been received during the view of the premises. The objection was overruled. After a verdict of conviction was returned the defendant moved for a new trial and thereupon renewed his objection theretofore presented. The motion for a new trial being denied the defendant appealed and on appeal insisted that the taking of testimony during the view was prejudicially erroneous and ground for reversal. The contention did not prevail for two reasons. The first reason was that it appeared that during all proceedings attending the view of the premises the court in its completeness was present, the only element absent being the walls and furnishings of the courtroom where the court usually convened. It was remarked "that there is no special sacredness in the atmosphere of a courthouse or the walls or furnishings of a courtroom which requires that sessions of the court shall be held there and not elsewhere, if otherwise the forms of law governing the trial of causes are observed . . . " The second reason given for refusing to sustain the defendant's contention was that the defendant, by his failure to present timely objection to the taking of testimony

during the view of the premises and his concurrence in the alleged irregularities, had waived any right that he might have had to object thereto.

It is our conclusion that the acquiescence of appellants and their counsel in the alleged irregularities of which they complain and their concurrence in the commission of such irregularities preclude them from now insisting upon these irregularities as a ground for reversal of the judgment. Appellants had ample opportunity to present timely objection to the court's visit to the Anderson plant in Fullerton. Not only did they make no objection thereto but their counsel expressly stated, when the visit was first proposed, that he would not raise the objection that the court would be going into another county. Furthermore, it is not denied that the legal representative of appellants was present in Fullerton at the time appointed and not only made no objection to the proceedings that were there taken but specifically stipulated that the court had met in Fullerton and that the testimony of different witnesses who were employed in the Anderson plant should be heard. There was then much more than passive acquiescence by counsel for appellants in the irregularities of which he now complains. There was active participation in such alleged irregularities. This acquiescence and concurrence in such claimed irregularities, in our opinion, constitute a waiver of the right now to raise objection to them. It may further be observed with respect to the evidence which was received in Fullerton that it stands uncontradicted and, so far as appears, no prejudice resulted to appellants from its reception.

█ The second contention advanced by appellants is that the judgment, in so far as it awards money damages to respondent, is void for the reason that the original complaint filed in the action demanded merely injunctive relief and no supplemental pleading was ever filed which demanded compensation by way of damages. It is urged, therefore, that the trial court was precluded from granting relief outside of the issues framed by the pleadings and that the award of damages was entirely unauthorized and beyond the court's power. The basis for this contention is that a purely equitable action does not warrant a court in granting relief which is strictly legal in character particularly when such relief is entirely outside the issues made by the pleadings. Concededly, this action whereby respondent sought only the issuance of an in-

junction is purely equitable. The contention presented by appellants therefore merits examination.

In giving consideration to the contention it may first properly be observed that at the time the action was instituted respondent had no cause of action for damages. The well had not then been placed on production and respondent had suffered no actual damage. The only relief for which respondent could then properly pray was that appellants should be restrained from causing damage in the future. This situation continued to exist until the well was placed on production during the pendency of the action. When the well began to produce oil on August 30, 1934, then for the first time a cause of action for damages accrued and admittedly at any time thereafter respondent might properly have brought an action for legal relief by way of damages. However, it is a familiar principle of equitable procedure that equity having once acquired jurisdiction of the subject matter of an action will retain it to the end that a complete adjudication of all conflicting rights may be had and a final determination of all matters in controversy may be accomplished. The damage suffered by respondent occurred after the suit for injunctive relief had been filed and was a matter which grew out of the situation portrayed by the allegations of respondent's complaint. It was therefore purely incidental to the relief which respondent originally sought by its equitable action and a court of equity having properly acquired jurisdiction was justified in retaining it until all issues in the action should be determined. (*McLaughlin* v. *Del Re,* 64 Cal. 472 [2 Pac. 244]; *McCarthy* v. *Gaston Ridge Mill etc. Co.,* 144 Cal. 542 [78 Pac. 7].)

With respect to the contention that the award of damages included in the decree is outside any of the issues presented by the pleadings and that therefore the court lacked the power to make the award, it may be observed that a supplemental pleading might have been filed after the evidence produced during the trial of the action had disclosed what amount of damage respondent had suffered. (*McCarthy* v. *Gaston Ridge Mill etc. Co., supra.*) However, it must be borne in mind that we are here considering an action in equity where the relief administered is such as the nature of the case and the facts as they exist at the termination of the suit demand. In such a situation a supplemental complaint is not

required to apprise the court of those facts which have occurred since the filing of the original complaint and which have an evidentiary bearing upon the facts in issue in the action as originally instituted. The allegation of such subsequent facts would be surplusage and not consistent with the familiar equitable maxim which declares that equity will not require the performance of an idle act. (*Collins* v. *Sargent,* 89 Cal. App. 107 [264 Pac. 776].) We conclude therefore that, under the circumstances here presented, the trial court was not without power to make an award of damages that were purely incidental to the equitable relief originally sought and that no reversible error was committed in making such award in the absence of a supplemental complaint alleging the existence of facts which occurred subsequent to the filing of the original complaint.

The third contention advanced by appellants also relates to the award of damages. It is pointed out that in making the award the trial court allowed the gross amount received by the appellant, Reconstruction Oil Company, from its sale of oil and gas produced by the well without permitting any deduction for cost of production. It is declared that this procedure amounted to an assessment of punitive damages in an equitable action which is contrary to equitable principles and that such action constituted reversible error.

While it is true that this action as originally instituted was strictly equitable, the award of damages incidental to the equitable remedy of injunction was a legal remedy and legal rules appropriate to the measurement of damages were applicable to this phase of the case. It is apparent that appellants fully appreciate that the award of damages was a remedy of legal rather than equitable cognizance for they demanded that a jury be empaneled to try this issue and the trial court's refusal of such demand is also urged as error requiring reversal of the judgment.

Since the award of damages was a legal remedy and the rules of law relating to the admeasurement of damages were proper to be applied it may be inquired what was the legal cause of action which rendered the assessment of damages appropriate. It is obvious that this cause of action was trespass. Respondent maintained that appellants by means of Hines No. 1 well had encroached upon respondent's property and that when this well was placed on production the oil and

gas underlying respondent's property was severed from the land and converted by appellants to their own use. It was further maintained that the trespass thus committed was not innocent or accomplished under a claim of right but that it was deliberate and was consummated by the intentional drilling of the well in such manner that it deviated from the perpendicular and beneath the surface of respondent's land. Examination of the transcript on appeal discloses that evidence was produced which tended to show that a trespass was committed by appellants and that it was a deliberate and intentional trespass. The trial court's finding to this effect may not successfully be attacked on the ground of evidentiary nonsupport. There remains for consideration the question of whether or not the trial court applied the proper measure of damages in the situation thus presented.

In *Lightner Min. Co.* v. *Lane,* 161 Cal. 689 [120 Pac. 771, Ann. Cas. 1913C, 1093], which was an action at law by the owner of a mine against the owners of an adjoining mine to recover the value of certain ore alleged to have been extracted by the defendants from the plaintiff's property it was declared that if the invasion of plaintiff's mine by defendants was the result of honest mistake and inadvertence the measure of damages would be the value of the mineral extracted from the ore less the cost of mining and milling but, if the trespass was intentional and with knowledge of plaintiff's rights, defendants would be chargeable with the value of the mineral after reduction without any deduction for expenses of mining and milling. That this is the general rule is indicated by the text of section 13 of the article on oil and gas appearing in 8 California Jurisprudence Supplement, at page 610. It is true that it is stated in *Lightner Min. Co.* v. *Lane, supra,* that the award of the gross value of mineral taken by a wilful trespasser without deduction for expenses of mining and milling amounts to an assessment of punitive damages and it may be conceded that as a general rule equity does not award damages by way of punishment. (*United States* v. *Bernard,* 202 Fed. 728, 732.) Nevertheless, it must be observed that in California there is but one form of action (sec. 307, Code Civ. Proc.), and that although this action as originally instituted was purely equitable in nature the claim for damages which arose during the trial and which came into existence through the persistent efforts of the Reconstruction defend-

ants to bring the well to production was legal in character. It is our conclusion, therefore, that in dealing with this phase of the case the trial court correctly applied the above-mentioned legal rule in awarding as damages the gross amount received by the Reconstruction defendants from the sale of oil and gas without permitting any deduction for expenses incurred by them in extracting and marketing such oil and gas.

The fourth contention of appellants is that the money judgment rendered against the individual appellants, Nathan Newby, Jr., Paul D. Newby, and Felix Gillespie, is erroneous. The basis for this contention is that since respondent elected to bring an action in equity and to seek relief based on equitable principles it waived the tort and was not entitled to recover damages from the above-mentioned individuals on the theory that these persons were jointly responsible with the Reconstruction Oil Company for the commission of a tort. It is maintained that in an equitable action the basis for recovery of a money judgment is predicated exclusively on the doctrine of unjust enrichment. It is further declared that, although the trial court expressly found that the Reconstruction defendants, which concededly embraces the above-mentioned individuals as well as the corporation, received the sum of money awarded to respondent as damages, which finding would appear to render irrelevant the contention here advanced, nevertheless this finding is entirely lacking in evidentiary support and must be disregarded.

Assuming that appellants are correct in their statement that the trial court's finding is unsupported by evidence and must therefore be disregarded we are nevertheless not impressed by the contention that the money judgment rendered against the above-named individual defendants is erroneous. Examination of the transcript impels the conclusion that the portion of the judgment which provides for the recovery of a specified sum of money from the Reconstruction defendants amounts to an award of damages in respondent's favor and that the award was made to compensate respondent for the damage which it suffered as a result of an intentional and deliberate trespass committed by the above-named individuals. We have heretofore expressed the opinion that the finding that an intentional trespass was committed is supported by the evidence. It is also our opinion that the evidence was ample to demonstrate that the three individuals were re-

sponsible for its commission and that a money judgment rendered against them as joint tort-feasors was justified by the evidence. Manifestly, the corporation itself was incapable of performing the physical acts which constituted an invasion of respondent's property. This could only be done by individuals and the evidence showed that it was done by the officers of the corporation and by the person who was selected by them to drill the well and who did direct and superintend its drilling. If respondent had a cause of action for damages caused by trespass it could have maintained an action at law against those persons who were responsible for the commission of the tort. The assessment of damages in this action originally instituted in equity was incidental to the equitable relief which respondent sought and was legal in nature. It was therefore properly determined by the application of legal rather than equitable principles.

The fifth contention advanced by appellants is that the trial court erroneously refused their demand for a jury to try the issue of damages. Since, as above noted, it is our opinion that the rendition of a money judgment against the Reconstruction defendants amounted to an award of damages and was therefore a remedy legal in character it is apparent that this contention merits serious consideration. Proper examination of it requires some mention of the factual background against which this problem is projected.

Inspection of the record shows that at various times during the trial of the action respondent demanded that the Reconstruction defendants produce records in their possession which would show the amount of money actually received from the sale of oil and gas recovered by the well. It was agreed that such records would be produced. Finally, on Febuary 5, 1935, after the trial had proceeded for approximately three weeks, respondent called appellant, Nathan Newby, Jr., as a witness for the purpose of proving by him the amount received. During the examination of this witness it appeared that appellants had produced records which showed the amount received from oil and gas sales up to the first part of January, 1935, but that such records were incomplete in that they did not show what amount had been received during the month of January, 1935. Respondent insisted that it was entitled to complete records which would include a report of sales made during the aforesaid month and counsel for appellants, al-

though he objected to the introduction of such evidence on the ground that it was outside the issues of the case, agreed that the additional data would be produced. The transcript shows that on February 6, 1935, an adjournment of the trial was had until February 27, 1935, when the court announced its decision in favor of respondent and ordered that a further hearing be had for the purpose of determining the amount of production of petroleum and gas from Hines No. 1 well and the value thereof. This hearing took place on March 15, 1935, at which time the court announced that the case was being opened "to establish the amount of damage, under the pleadings". Appellants then renewed their objection that the inquiry proposed to be conducted was outside the issues as framed by the pleadings. This objection was overruled. Respondent thereupon offered in evidence a report prepared by a firm of auditors for the Reconstruction Oil Company presumably furnished to respondent by the legal representatives of said corporation which showed that the total amount received by the corporation from sales of oil and gas produced by the well up to 9 o'clock A. M. of March 15, 1935, was $22,557.05. Appellants stipulated that the report was accurate and that the above-stated amount was correct but continued to object to the reception of the evidence on the ground that the question of damages was outside the issues of the case. A further ground of objection which was then for the first time urged was that appellants were entitled as a matter of right to a jury trial on the issue of damages which had not been waived by reason of the fact that respondent's complaint for an injunction contained no allegation of damage and no prayer for money damages. Appellants thereupon demanded a jury trial on the issue of damages if such issue should be considered by the court. At the conclusion of prolonged argument by counsel the trial court admitted the evidence pursuant to the stipulation as to its correctness and took under submission a motion by appellants to strike it from the record on the grounds originally urged as objections to its reception. Subsequently on May 22, 1935, the court entered judgment whereby it was adjudged that respondent should recover from the Reconstruction defendants the total amount which the evidence showed had been received from the sale of oil and gas produced by the well, viz.: $22,557.05.

With respect to the matter now under consideration the trial court evidently concluded that not only were there no issues presented in the case which required a trial by jury but also that appellants had waived any right they might have possessed to have a jury trial on the issue of damages by their failure sooner to have presented a demand for a jury. This is made clear by an express finding to this effect which the court made. It is obvious that if the court's refusal to submit the issue of damages to a jury is sustainable on either of the above-mentioned grounds no reversible error was committed by such refusal.

It is our conclusion that upon the facts and circumstances of this case as they are disclosed by the record herein appellants were not entitled as a matter of right to a trial by jury of the issue of damages. The action as it was originally instituted was purely equitable in character and the relief which was sought was strictly equitable. Respondent's claim for damages arose after the suit was brought and came into existence as a result of the persistent and determined efforts of the Reconstruction defendants to complete the drilling of the well to the point of production and to continue the production of oil and gas from the well during the pendency of the action. That the trial court was fully justified from the evidence in finding that these appellants were deliberate and intentional trespassers on respondent's property and that the proper measure was applied to the question of damages are matters which, in our opinion, may not be successfully disputed.

■ It is a settled principle of equity that the right to have an issue of fact tried by a jury does not exist in causes which are purely equitable in character. (*Koppikus* v. *State Capitol Commrs.* 16 Cal. 248; *Cassidy* v. *Sullivan,* 64 Cal. 266 [28 Pac. 234]; *McLaughlin* v. *Del Re, supra; Pacific Ry. Co.* v. *Wade,* 91 Cal. 449 [27 Pac. 768, 25 Am. St. Rep. 201, 13 L. R. A. 754]; *Cauhape* v. *Security Sav. Bank,* 127 Cal. 197 [59 Pac. 589]; *Matter of Coburn,* 165 Cal. 202, 219 [131 Pac. 352].) From this principle it follows that the granting or refusing of a demand for a jury trial as to some issue of fact in an action in equity is a matter which is confided to the trial court's discretion and if a jury is allowed in such a case its verdict is merely advisory to the court. (*La Societe Francaise* v. *Selheimer,* 57 Cal. 623; *Sweetser* v. *Dobbins,* 65 Cal. 529 [4 Pac. 540]; *Curnow* v. *Blue Gravel etc.*

*Co.*, 68 Cal. 262, 264 [9 Pac. 149] ; *Vallejo etc. R. R. Co.* v. *Reed Orchard Co.*, 169 Cal. 545, 556 [147 Pac. 238] ; *Meinecke* v. *Frasier*, 69 Cal. App. 688, 690 [232 Pac. 499]. ▉ In conformity with these established principles it would seem proper that, in an action which is admittedly strictly equitable in character wherein the equitable relief of injunction is sought and an issue of damages is raised which is incidental to the principal issue which is whether or not an injunction shall issue, a trial by jury of the issue of damages does not exist as a matter of right and the grant or denial of a demand for a jury to try such an issue is entirely discretionary with the court. Upon this proposition it must, however, be conceded that the decisions in California are conflicting. The following authorities support the principle as above stated: *McLaughlin* v. *Del Re, supra; Sullivan* v. *Royer,* 72 Cal. 248 [13 Pac. 655, 1 Am. St. Rep. 51] ; *Churchill* v. *Baumann,* 104 Cal. 369 [36 Pac. 93, 38 Pac. 43] ; *Richardson* v. *City of Eureka,* 110 Cal. 441 [42 Pac. 965] ; *McCarthy* v. *Gaston Ridge Mill etc. Co., supra; Bettencourt* v. *Bank of Italy etc. Assn.*, 216 Cal. 174 [13 Pac. (2d) 659]. To the opposite effect are the following decisions which hold that in an action of this character the issue of damages is strictly legal in character and that the trial court possesses no discretion to refuse a demand for a trial by jury to determine such issue: *Hughes* v. *Dunlap,* 91 Cal. 385 [27 Pac. 642] ; *Moore* v. *San Vincente Lumber Co.,* 175 Cal. 212 [165 Pac. 687] ; *Farrell* v. *City of Ontario,* 39 Cal. App. 351 [178 Pac. 740]. ▉ In the instant action where the facts disclosed by the record indicate that the correct measure of damages was applied by the trial court and that in our opinion a jury properly instructed and properly performing its duty could have returned no other verdict than one favorable to respondent for the precise amount which was here awarded as damages, we are constrained to follow the rule announced in the former of the two above-noted groups of decisions and to declare that no error was committed by the trial court in refusing the demand of appellants for a jury trial on the issue of damages.

▉ The sixth contention presented on this appeal is that the trial court committed numerous errors in the reception of evidence produced by respondent and in its refusal to admit other evidence offered by appellants and that the errors thus committed are sufficiently serious to require reversal of the

judgment. In support of this contention appellants have specified thirty-five alleged errors of this character. We deem it a sufficient answer to the contention thus presented to declare that careful review of the entire record on appeal has failed to produce a conviction that any errors in the reception or rejection of evidence by the trial court resulted in a miscarriage of justice. Analysis of the numerous alleged errors in this respect which are charged against the trial court would unduly lengthen the opinion herein and is not required in view of the above-stated conclusion.

The seventh contention advanced by appellants is that numerous designated findings and portions of findings made by the trial court are lacking in evidentiary support, that certain specified findings are inconsistent and that certain findings contain improper and unnecessary specifications. Analysis of the findings impels the conclusion that they are perhaps unnecessarily voluminous. We find no occasion, however, for indulging in an extended discussion of them since an examination of the entire record warrants the opinion that the trial court was amply justified from the evidence which was placed before it and from inferences fairly deducible from the evidence in finding that the Reconstruction defendants were guilty of an intentional, wilful, and deliberate trespass upon respondent's property. The decree granting an injunction against the continuance of such trespass and awarding damages as incidental relief to the equitable remedy of injunction was therefore proper and may not be successfully attacked on appeal.

It may not be out of place to observe that very considerable effort has been expended on this appeal in attacking the results of the subsurface survey of Hines No. 1 well conducted by Alexander Anderson, Inc. Appellants' endeavor in this regard is entirely comprehensible since the correctness of the subsurface survey was vital to respondent's case. Unless it could be established to the satisfaction of the trial court that Hines No. 1 well had been so drilled that it penetrated the formation underlying the surface of respondent's property respondent could not hope to be successful in this action. It is obvious, however, that the correctness of the results achieved by the Anderson survey was a question of fact to be determined by the trial tribunal. The mechanical apparatus used in making the survey and the methods employed in the mathe-

matical calculations that formed an important part of the survey were exhibited and explained to the court. The various individuals who took part in the survey, particularly the inventor of the system, were before the court and were subjected to extended examination and searching cross-inquiry. Evidence which disputed the accuracy of the Anderson method and the claimed correctness of the results obtained thereby was submitted by appellants. The trial court having the benefit of all evidence relating to the Anderson survey arrived at the conclusion that it was a proper method of determining the course and direction underground of the well and that the results obtained thereby were correct. Under such circumstances a reviewing court is not justified in disturbing the trial court's conclusion regarding a matter which is unmistakably one of fact.

The eighth and final contention presented on this appeal is that the trial court abused the concededly wide discretion with which it was invested in refusing a motion for a new trial which was based in part on the ground of newly discovered evidence. The newly discovered evidence which was apparently the principal ground urged in support of the motion consisted of the affidavits of three persons to the effect that after subsurface surveys of Hines No. 1 well had been completed and after the trial of the instant action and after respondent had been informed by the results of the surveys and by the evidence produced during the trial of the alleged subsurface location of Hines No. 1 well respondent drilled a well on its property with the purpose of intersecting and destroying Hines No. 1 well but that nevertheless neither the amount of production nor the gravity of the oil produced by Hines No. 1 well was affected in the slightest degree by the drilling of the additional well by respondent. The announced inference which it is declared the trial court should have drawn from the above-described evidence was that the subsurface survey conducted by Alexander Anderson, Inc., was inaccurate and the results claimed to have been produced thereby were incorrect. It appears, however, that counteraffidavits in opposition to the affidavits filed by appellants in support of the motion were produced by respondent and that thereby a serious conflict in the evidence was presented. Under these circumstances the trial court's order denying the motion for a new trial may not be disturbed. (*Kataoka* v. *Han-*

*selman,* 150 Cal. 673 [89 Pac. 1082] ; *Kellett* v. *Kellett,* 110 Cal. App. 691, 696 [294 Pac. 755] ; *People* v. *Frank,* 129 Cal. App. 119, 126 [18 Pac. (2d) 719].

For the reasons stated herein the judgment from which this appeal has been taken is affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 27, 1937.