[Civ. No. 30556.   Second Dist., Div. Two.   Nov. 27, 1967.]

TSURO INOUYE KAMEI, a Conservatee, etc., Plantiff and
Appellant, v. MASAAKI KUMAMOTO et al., Defend-
ants and Respondents.

Paul Taylor and David Sosson for Plaintiff and Appellant.

A. P. G. Steffes for Defendants and Respondents.

ROTH, P. J.—Tsuro Inouye Kamei, by her conservator Takeshi Kawagoe, appeals from a judgment dismissing her action against Masaaki Kumamoto and Phyllis K. Kumamoto for specific performance of a settlement agreement (pending action). The judgment followed an order sustaining respondents' demurrer to Tsuro's amended complaint for specific performance after Tsuro indicated to the trial court she did not desire to amend. Tsuro herself presented the judgment of dismissal to perfect her right to appeal.

The pending action filed in July 1965, is the sequel to an action filed by Tsuro on April 25, 1963, (rescission action) against Mr. Kumamoto and several Does, to cancel a deed procured by fraud, deceit, undue influence and without consideration, to determine adverse claims and quiet title to real property. The pending action pleads an agreement which settles the rescission action.

Tsuro is the widow of Teiichi Kamei, who died intestate in Long Beach, on March 29, 1954. Mr. Kamei was the fee simple owner of certain real property.

Since the purpose and effect of the pending action would be to settle all matters complained of in the rescission action which has never been tried, it becomes important to discover what it was about. The rescission complaint alleges that Tsuro and her husband "... were at all times ... unable to read and write English, ... that both ..." as Japanese had been interned in enemy alien camps in the United States during the Second World War, and having heard constantly of losses of property in California suffered by fellow Japanese with whom they were interned under the Alien Custodian Property Acts and processes thereunder, they were fearful long after their release from "... internment that any real property they might have or subsequently acquire would be in

jeopardy if any question came up concerning their marital status and their status as former Internees.''

Respondent Masaaki was the nephew of Tsuro's husband, lived with the Kameis, and worked in their business. When Mr. Kamei's health began to wane he relied increasingly upon Masaaki's advice and judgment and ''reposed trust and confidence in him.'' On or about March 26, 1954, three days before Mr. Kamei's death, Masaaki and a friend, one U. Nishikawa allegedly told the Kameis that in order that Tsuro ''might take complete title . . .'' to her husband's property upon his death, ''. . . it would be necessary for [Tsuro] . . .'' to include Masaaki's name in any instrument transferring the real property in question, that such inclusion ''. . . was simply a borrowing of such name'' and was Tsuro's protection; that if this was not done the property would be confiscated by the United States.

Relying on these assertions, Mr. Kamei conveyed the property to Tsuro and respondent Masaaki as joint tenants. Tsuro in the rescission action, demands that the deed be cancelled, and that the court determine the nature of Masaaki's adverse claim.

On April 25, 1963, while the rescission action was pending, Tsuro sold her undivided one-half interest in the property to Home State Investment Co., Inc.

On June 6, 1963, Home filed an action to have the entire property partitioned between itself and Masaaki and those who claimed under him. On February 18, 1964, Tsuro, respondents and all parties to the action brought by Home, stipulated to a judgment which gave to Home clear title to the undivided one-half of the real property conveyed to it by Tsuro.

In July 1965, Tsuro filed the pending action. She alleges that on March 12, 1965, she and respondents compromised and settled their differences set out in the rescission action and executed a written escrow agreement to that effect. The settlement agreement provides that respondents quitclaim to Tsuro 25 percent of the remaining one-half of the disputed real property and that Tsuro quitclaim to respondents 75 percent thereof, and for a dismissal with prejudice of the rescission action. Tsuro further alleges that she has performed all the terms of the escrow agreement but respondents have not deposited a quitclaim deed for her 25 percent. The rescission action is referred to in the complaint of the pending action. Tsuro prays for specific performance of the escrow agreement.

Respondents demurred on the ground that the rescission action was pending between the same parties. A minute order was entered as follows:

"Demurrer sustained.

"Plaintiff, having elected to proceed in equity in . . . [the original action] should have filed supplemental pleadings to bring to the notice of the court any issues which occur after the commencement of the action.

"Equity demands that multiplicity of actions be avoided.

"At plaintiff's request, the sustaining of the demurrer is made without leave to amend.

"Attorney order."

The judgment of dismissal is predicated upon the excerpted order.

It is difficult for us to ascertain what the issue is. Respondents in their brief argue that the escrow agreement was never completed. This certainly does not appear from the complaint. Since we must assume the facts as pleaded (*Schaefer* v. *Berinstein,* 140 Cal.App.2d 278, 288 [295 P.2d 113]) we are confronted with a *fait accompli,* to wit: a settlement agreement.

■ Generally, a demurrer will be sustained or a motion to abate a pending action will be granted if there is another action pending between the same parties in which the issues are the same. (Code Civ. Proc., § 430, subd. 3.) ■ The limitations on this rule are, however, stated in *Trickey* v. *City of Long Beach,* 101 Cal.App.2d 871, wherein the court says at pages 881, 882 [226 P.2d 694] : "In order that a second action be abated because of the pendency of a prior action, it is elementary that the issues in the two actions must be substantially the same. In determining this question, *the test applied is whether a final judgment in the first action could be pleaded in bar as a former adjudication. (Lord v. Garland,* 27 Cal.2d 840, 848 [168 P.2d 5] ; 1 Cal.Jur. 28, § 8.) With this test in mind, it appears that the issues in the *Abrams* [Superior Court case No. 546, 583] case are not the same as in the instant case and that if a judgment were rendered in that case it could not be pleaded in bar as a former adjudication." (Italics added.)

■ Obviously, what the court says in *Trickey,* is most apposite to the situation at bench. Tsuro could go to trial and lose the rescission action and still prevail in the pending action assuming she proves the allegations made in her complaint.

Respondents' primary objection seems to be that since the rescission action was equitable in nature, there can be no

question but that the court had acquired complete jurisdiction to determine fully the controversy existing between the parties. (*M. H. Golden Constr. Co.* v. *Superior Court,* 98 Cal. App.2d 811 [221 P.2d 218]; *Gorman* v. *Superior Court,* 23 Cal.App.2d 173, 177 [72 P.2d 774]; *DeBrincat* v. *Mogan,* 1 Cal.App.2d 7, 10 [36 P.2d 245]), and that once a court of equity has obtained jurisdiction of cause, it will dispose of the whole controversy and grant specific relief and damages in the same action to avoid a multiplicity of suits. (4 Witkin, Summary of Cal. Law, (1960) pp. 2787, 2788; *Watson* v. *Sutro* (1890) 86 Cal. 500 [24 P. 172, 25 P. 64]; *Crouser* v. *Boice* (1942) 51 Cal.App.2d 198 [124 P.2d 358]; *Union Oil Co.* v. *Reconstruction Oil Co.* (1937) 20 Cal.App.2d 170 [66 P.2d 1215]; *Foy* v. *Foy* (1937) 23 Cal.App.2d 543, 546 [73 P.2d 618].)

Respondents therefore argue that Tsuro should have filed a supplemental complaint in the rescission action, quoting 2 Witkin, California Procedure (1954) pp. 1629-1630, wherein he says:

"Nature of Supplemental Pleadings.

"C.C.P. 464 states: 'The plaintiff and defendant, respectively, may be allowed, *on motion,* to make a *supplemental complaint or answer,* alleging facts material to the case *occurring after* the former complaint or answer.' (See generally *Clark,* p. 741; 10 Hillyer 9572; Fed. Rule 15(d); 1 B. & H. 941.) (1) *Complaint.* The supplemental complaint is described in *Calif. etc. Co.* v. *Schiappa-Pietra* (1907) 151 Cal. 732, 742 [91 P. 593], as follows: 'The complaint, whether original or amended, can properly speak only of things which occurred either before or concurrently with the commencement of the action. The office of a supplemental complaint is to bring to the notice of the court and the opposite party things which occurred after the commencement of the action, and which do or may affect the rights asserted and the relief asked in the action as originally instituted.'"

The pending action in specific performance is also an equitable action and the same rules respondents urge will empower the court to consolidate the rescission action with the pending action, should such consolidation be requested or become necessary.

It may very well be that Tsuro would have been better advised had she filed a supplemental complaint in the rescission action. If she had done so, proper trial procedure would demand that the supplemental pleading which sets forth a

settlement of the very cause of action pleaded in the rescission action, be tried first. It is clear that if Tsuro proves the agreement pleaded in the pending action, the rescission action falls by the wayside. We know of no rule of law, however, which compels Tsuro to proceed by way of supplemental complaint.

If the pending action had been filed first and the rescission action second, we could readily understand a move to abate. If such were the situation, the doctrine of *Trickey, supra,* would be most appropriate because in such circumstances, a judgment to the effect that the controversy had been settled, would completely nullify the second action.

There is much discussion by Tsuro in her briefs to the effect that the rescission action sounds in tort and the pending action is *ex contractu.* We consider this facet of the matter completely irrelevant on the issue before us.

The judgment of dismissal is reversed and respondents are directed to answer within such reasonable time as may be fixed by the trial court.

Herndon, J., and Fleming, J., concurred.

A petition for a rehearing was denied December 21, 1967, and respondents' petition for a hearing by the Supreme Court was denied January 24, 1968.